# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
LIND, KRAUSS, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist JOSHUA D. CHANDLER**
**United States Army, Appellant**

ARMY 20120680

Headquarters, I Corps (Rear) (Provisional) (convened)
Headquarters, I Corps (action)
David L. Conn, Military Judge
Colonel Kurt A. Didier, Staff Judge Advocate (pretrial)
Colonel William R. Martin, Staff Judge Advocate (post-trial)

For Appellant: Captain Robert H. Meek, III (argued); Lieutenant Colonel Jonathan F. Potter, JA; Major Amy E. Nieman, JA; Captain Sara E. Lampro, JA (on brief).

For Appellee: Captain Scott L. Goble, JA (argued); Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major John K. Choike, JA; Major Alison L. Gregoire, JA (on brief).

7 April 2015

---------------------------------
OPINION OF THE COURT
---------------------------------

PENLAND, Judge:

An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of conspiracy to sell military property of a value of more than $500; conspiracy to steal military property of a value of more than $500; conspiracy to steal military property of a value of less than $500; wrongful disposition of military property of a value of more than $500; sale of military property of a value of more than $500; sale of military property of a value of less than $500; larceny of military property of a value of more than $500; larceny of military property of a value of less than $500; housebreaking; unlawful entry; wrongful communication of a threat; and obstruction of justice in violation of Articles 81, 108, 121, 130, and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 881, 908, 921, 930, 934 (2006). The panel sentenced appellant to a dishonorable discharge,

confinement for ten years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for nine years and two months, forfeiture of all pay and allowances, and reduction to the grade of E-1.

This case is before the court for review under Article 66, UCMJ. Appellant raises three assignments of error, all of which merit discussion but no relief. We have also considered those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they are without merit. Though not raised by appellant, we also find that two of the findings of guilt of conspiracy should be consolidated into one specification to reflect appellant's single agreement to commit multiple offenses.

## FACTUAL BACKGROUND

Appellant was an armorer in Headquarters and Headquarters Company, 4th Battalion, 9th Infantry Regiment, 4th Stryker Brigade Combat Team, 2d Infantry Division, Joint Base Lewis-McChord (JBLM), Washington. He conspired with multiple soldiers to steal and sell military property from the battalion; stole the military property; later sold some of this military property; and threatened to kill one of his co-conspirators for his cooperation with law enforcement efforts to recover it.

Appellant's misconduct began with relatively low-value larceny. Between May and November 2011, he conspired with Specialist (SPC) Daniel Green to steal Meals-Ready-to-Eat (MRE) from Company C's supply room, where SPC Greene worked. Appellant planned to sell the MREs at gun shows in Oregon. Appellant and SPC Greene stole MREs from Company C's supply room on multiple occasions. Appellant then stole more military property from the supply room, including belt cutters, impact gloves, and chemical illumination sticks. The aggregate value of this stolen military property was approximately $4,500.

In December 2011, appellant and Private (PVT) Nicholas Solt agreed to steal and sell sensitive weapon accessories and flashlights from Company C's arms room. Appellant and PVT Solt secreted away some of the items for illicit sale and profit, including: thermal sights, laser range finders, machine gun optics, close quarters holographic sights, and tactical flashlights. On 3 January 2012, unit leaders discovered and reported the theft to Criminal Investigation Command (CID) at JBLM. Working with the Federal Bureau of Investigation and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), CID interviewed multiple soldiers from 4-9 Infantry and soon discovered that appellant was an aspiring weapons dealer in the Portland, Oregon, area.

On 4 January 2012, CID Special Agent (SA) DS interviewed appellant. Prior to the interview, SA DS read appellant his Article 31, UCMJ, rights, which appellant waived. Appellant told him that he was aware of the investigation because he was friends with SPC WY, Company C's armorer. Appellant told CID SPC WY had informed him nearly $500,000 worth of military property was stolen. During this interview, appellant did not tell CID that he had possessed or sold any of the stolen property without proper authority. Also on this date, SA DS accompanied appellant to his mother's home in Oregon. Special Agent DS searched the home, but found no stolen military property.

On 6 January 2012, appellant went to the JBLM Trial Defense Services (TDS) office and sought the advice of Captain (CPT) RS, a military defense counsel.[1] Captain RS "explained to appellant the importance of honesty, thoroughness, and not concealing facts, so [CPT RS] could give [appellant] the best possible advice." Captain RS also provided appellant "with the customary defense-oriented advice such as to not talk to anyone about the allegations . . . ." Appellant told CPT RS that: he innocently possessed the missing military property; he agreed to pay PVT Solt $3,000 for some of his property; PVT Solt placed multiple bags in his vehicle; and he believed the items therein were mostly broken and further assumed they were surplus. Appellant claimed that on 3 January 2012 he first began to realize they were stolen.

---

[1] This and our opinion's next two paragraphs are based on affidavits from appellant's defense counsel. Appellant's affidavit does not conflict with those of his defense counsel; in pertinent part, appellant writes:

> On 10 January 2012, I went to CID, on advice of counsel, and told them what I knew about equipment missing from the Charlie Company, 4/9 arms room. I offered to show CID where the equipment was, again on the advice of counsel, and I agreed to work with CID in a sting operation against Private Nicholas A. Solt.
>
> I cooperated with CID in the investigation into the stolen property on the advice of my defense counsel, [CPT RS]. The CID agent I spoke to, [SA MM], informed me and my defense counsel that he had no authority to make a deal with me. Captain [RS] advised me to turn over the property and work with CID despite the fact that there was no deal for immunity.

Captain RS consulted with Major (MAJ) BG, his supervisory defense counsel, and they both met with appellant, challenging his characterization of his involvement as an innocent mistake. Appellant steadfastly claimed he did not know PVT Solt had stolen the weapons accessories. Captain RS and MAJ BG considered and discussed with appellant his options and the associated benefits and risks. They discussed with appellant that potential benefits of cooperation included buttressing his claim that he innocently and mistakenly possessed the property. But, they also discussed with him the potential risks, including potential criminal charges for previously lying to CID; increased scrutiny for other misconduct; vulnerability to a law enforcement investigation, which would discredit his claim of innocent and mistaken possession; potential criminal charges for breaking into a government facility and stealing military property; and vulnerability to revenge from PVT Solt. They advised appellant to cooperate with CID and reveal PVT Solt's involvement, noting, among other things, that he would be vulnerable to prosecution for the larceny even if he cooperated. Captain RS and MAJ BG told appellant that if he approved, they would attempt to secure immunity in return for his cooperation. Appellant expressed his understanding and told CPT RS and MAJ BG that he wanted time to consider his options.

On 9 January 2012, appellant again met with CPT RS, and they reviewed appellant's options. They also reviewed the following facts: multiple news outlets had publicized the theft and law enforcement investigation; CID had seized appellant's phone, yielding contact information belonging to his acquaintances in Oregon to whom he had sold or transferred the stolen property.[2] With these facts, CPT RS consulted with MAJ BG again, and they maintained their advice that appellant should cooperate with CID before they discovered his full involvement and arrested him. Appellant informed CPT RS that he wanted immunity in exchange for his cooperation. Captain RS and MAJ BG communicated with government counsel and advocated in support of appellant's wishes, but the government declined to provide immunity or any other form of leniency. With MAJ BG's concurrence and believing that CID would soon arrest appellant anyway, CPT RS advised him to cooperate with CID even without immunity, in order to maximize the chance that

---

[2] Between 7-9 January 2012, CID seized appellant's phone and confirmed a suspicion that he had contact with at least one known weapons dealer in the Portland, Oregon area, Mr. BB. Also on 9 January 2012, without CPT RS's knowledge at the time, CID interviewed SPC Greene, suspecting his involvement in the optics theft. Denying any role in that larceny, SPC Greene instead confessed his own conspiracy with appellant to steal MREs. With these developments, CID then developed a "full-court press" investigative plan against appellant, primarily suspecting him of stealing the weapons parts and surreptitiously placing a Global Positioning System-enabled tracking device on his vehicle.

authorities would believe his claims of innocence. Appellant chose to cooperate, and MAJ BG planned for a meeting with CID the next day.

On 10 January 2012, CID received a call from the TDS office, stating that a soldier at the office—appellant—had information regarding the stolen property's location. Special Agent MM and SA AW met with appellant and CPT RS at the TDS office. The special agents advised appellant of his Article 31 rights, and appellant again waived his rights. Appellant told the agents that PVT Solt agreed to sell him property for $3,000, that PVT Solt met him in their barracks parking lot and told him to "take a walk," and that, upon returning from this walk, appellant discovered the property and a pair of bolt cutters in his vehicle. According to appellant, PVT Solt entered the supply room and arms room office while wearing gloves, using a duplicate key and "card[ing] a few locks . . . ." Appellant further told SA MM and SA AW that he removed the property from their cases, placed the cases in trash bags, and discarded them in a dumpster, the location of which he claimed he could no longer remember. Appellant said he placed the property in multiple bags, stored four of them in Mr. WP's apartment, and sold the remaining property to Mr. BB in Tigard, Oregon. Acting with urgency because of the stolen property's potential for reaching the hands of bad actors, CID asked appellant to help recover it that day. Appellant agreed, and he accompanied CID, ATF, and local police officers as they recovered stolen property from Mr. WP and Mr. BB from 10-12 January 2012. Among this property were MREs, which appellant and SPC Greene had stolen.

On 11 January 2012, appellant agreed to operate as a CID "source," assisting its investigation without any promise of leniency or immunity. However, during the nighttime hours of 16 January 2012 and acting outside the scope of his agreement with CID, appellant abruptly entered SPC Greene's barracks room and told SPC Greene, "you fucked up." Appellant was concerned with CID's discovery of the stolen MREs, and he accused SPC Greene of helping their investigation. He told SPC Greene that if his cooperation resulted in appellant's confinement, he would kill him after release.

On 17 January 2012, SA DS questioned appellant again. Appellant was advised of his rights again and waived them. Appellant told SA DS that PVT Solt approached him in December 2011 and offered to sell him military property for $3,000. Appellant told SA DS that, on 16 December 2011, PVT Solt placed multiple trash bags containing military property in appellant's vehicle. Appellant transported the property to Oregon and, he claimed, opened one of the bags to inspect its contents. Appellant told SA DS that he believed he saw "decommissioned aiming points" in the bag and that he gave a bag of property to Mr. BB, a weapons and weapon accessories dealer in the Portland area. Appellant claimed that he began to realize that the property was not actually decommissioned, and that he stashed the remaining bags of property at Mr. WP's house in order to seek legal counsel and arrange its return to Army control.

Later on 17 January 2012, while acting as a source and wearing a listening device which CID monitored, appellant met with PVT Solt. He told PVT Solt that he was attempting to negotiate the $3,000 purchase price with a downstream buyer and, as an interim payment, gave PVT Solt $500 in controlled CID funds. The CID agents then apprehended PVT Solt. After CID focused its investigation on appellant, he helped recover 95% of the property.

Appellant and PVT Solt stole nearly $634,000 worth of military property. The adverse impact on training was palpable. Without the stolen weapons accessories, Company C's February 2012 collective training exercise at Yakima Training Center was noticeably degraded and the unit did not have fully-equipped weapons systems during its preparation for deployment to combat.

## PROCEDURAL BACKGROUND

The case was originally tried 9-11 July 2012. During an Article 39(a), UCMJ, session to discuss findings instructions, defense counsel requested the military judge give the mistake of fact instruction applicable to specific intent crimes, which only required that the mistake be honest. *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 5-11-1 (1 Jan. 2010). The military judge agreed with defense counsel's argument that some evidence had been raised to trigger a mistake of fact instruction for the offenses of conspiracy, sale and wrongful disposition of military property, and larceny. However, the judge mistakenly provided the mistake of fact instruction pertaining to general intent offenses, which required that the mistake be both honest and reasonable. The military judge instructed the panel that:

> With regard to the offenses of larceny, wrongful sale or disposition of military property, or conspiracy to commit these crimes the evidence has raised the issue of ignorance or mistake on the part of the accused concerning whether the military property he or his co-conspirator sold or disposed of was no longer usable or intended for military use.
>
> [T]he accused is not guilty of wrongful sale or disposition of military property or larceny if:
>
> One, he mistakenly believed that the property was no longer serviceable and usable as military property and had been abandoned; and
>
> *Two, if such belief on his part was reasonable.*

6

(Emphasis added).

The members determined beyond a reasonable doubt that appellant did not honestly and reasonably believe the property was abandoned, given that they found appellant guilty of a majority of the larceny and related specifications. With those and other findings of guilty, the panel sentenced appellant as described above on 11 July 2012.

When reviewing the record for authenticity, the military judge realized his mistake of fact instruction was incorrect. The judge determined he should have provided the panel with the mistake of fact instruction used when specific intent offenses are at issue in accordance with *United States v. Binegar*, 55 M.J. 1 (C.A.A.F. 2001). On 4 April 2013, the military judge emailed the following message, in pertinent part, to counsel:

> I received the Chandler Record on Tuesday. After reviewing the record, it confirmed a sinking feeling I had that I provided members with an erroneous instruction on the defense of mistake of fact. Under [the] *Binegar* opinion, the instruction should have been an honest mistake, not honest and reasonable. Since this was objected to, it amounts to plain error and . . . it is my responsibility under the Manual [for Courts-Martial] to direct a proceeding in revision.
>
> So, IAW [Rule for Courts-Martial (R.C.M.)] 1102 I am directing a post-trial session with the members to re-instruct them on the issue of mistake of fact IAW [the] *Binegar* case.
>
> . . . .
>
> My proposal will be to reinstruct the members and direct them to once again deliberate on findings in light of the corrected instruction. I will also give counsel an opportunity to re-argue on findings in light of the corrected instruction. Obviously, if there are different findings, the members will also deliberate and vote on a new sentence, provided the accused is found guilty of any offense.

On 1 May 2012, the I Corps and JBLM Chief of Criminal Law forwarded the following message, in pertinent part, from the military judge to the panel members and counsel:

7

Members,

As the presiding judge, I have directed a proceeding in revision in the case of US v. Chandler. This is due to an error I made in instructing you, specifically on the defense of mistake of fact. As a result, I am going to provide you with a corrected instruction on the law, including the corrected instruction on the defense of mistake of fact. Counsel will then have an opportunity to argue the case again. You will deliberate again on your findings, vote and announce your findings in light of the corrected instructions.

Please do not infer from my decision to conduct this proceeding that I expect your findings either to remain the same or change based on the process and revised instruction. The only purpose for this proceeding is to ensure you are correctly instructed on the law and that you base your decision on the law and evidence.

During the proceedings, the transcribed record of trial will be available to you, along with copies of all the exhibits admitted during the trial. Realizing that it has been approximately 9 months since you have heard the evidence and made your original findings, I am attaching a transcript of the relevant portions of the trial and testimony of the witnesses and list of exhibits admitted, which you may wish to review as an aid in refreshing your memory as to the facts. I do not expect you to read this transcript in advance of the proceedings, but want to make it available to you in the event you wish to re-acquaint yourself with the evidence before Saturday's session.

I once again remind you of your original oath, which remains in effect. You may not discuss the case or issues related to it with anyone, not even among your fellow court members, until you are together in the deliberation room deliberating on findings. Do not conduct any research or consult any resource as to the law about the case. Have no contact with any of the witnesses or parties to the proceedings, including myself or the counsel. If you have questions, please hold them until we reassemble as a court-martial.

On 3 May 2013, trial defense counsel moved the military judge, in writing, to enter findings of not guilty of the specifications affected by the erroneous mistake of fact instruction, a rehearing on the sentence for the remaining specifications, or alternatively, a mistrial. Defense counsel asserted, *inter alia*, the military judge had no authority to order a post-trial session under R.C.M. 1102 for the purpose of recalling the panel, instructing them again on findings, and directing them to deliberate anew. The government neither objected nor sought to petition this court to prevent such a proceeding.

On 4 May 2013, the military judge conducted an Article 39(a), UCMJ, session before recalling the panel. While the judge denied the defense's motion for a mistrial, he did not explicitly rule on the defense's motion for findings of not guilty. Defense counsel requested the military judge's permission to voir dire the panel, but the judge tacitly denied the request. He did, however, tell counsel that:

> [I]n the event there is a different finding, I will permit *voir dire* on the issue of whether members have been exposed to any additional information that might influence their impartiality with regard to sentence. I will also permit the accused to make an additional sworn or unsworn statement, should Specialist Chandler choose to do so.

> I have decided that, although technically not applicable, I will impose the R.C.M. 810(d) rule applicable to retrials and limit the maximum punishment to the sentence the accused received from this court-martial. I believe this would make the proceedings in revision fully consistent with R.C.M. 1102(c)(2) [sic] by preventing any possible increase in punishment of the accused.

Later that morning, the military judge called the panel and, after stating he had incorrectly instructed them the previous July, informed them that:

> [T]he government admitted a statement by the accused in which the accused indicated. . . an alleged co-conspirator, Private Solt, placed garbage bags of items in the accused's vehicle and asked the accused to sell them. If that occurred and the accused honestly and mistakenly believed either the property was abandoned property or Private Solt was an owner of the property, even if not objectively reasonable, it is a complete defense to larceny and conspiracy to commit larceny.

The military judge then reiterated the substance of this instruction consistent with the sample contained in paragraph 5-11-1 of the Benchbook. He directed them to deliberate and again return findings regarding Specifications 1 and 2 of Charge I (conspiracies with PVT Solt to steal and sell military property), Specification 2 of Charge II (wrongful disposition of weapons accessories and other military property to Mr. BB), Specification 1 of Charge III (larceny of military property between 1 December and 3 January 2012) and the Specification of Charge IV (housebreaking, "insofar as the acts are related to the conspiracy with Private Solt to commit larceny.").

The panel deliberated and returned findings of guilty to each offense, excepting several words from Specification 2 of Charge I.[3] Though the findings were not identical to those announced at the original trial, the military judge suggested that the panel's findings did not require new sentencing proceedings. Both trial counsel and defense counsel agreed.

Before adjournment, defense counsel requested the military judge reconsider the 3 May 2013 motion for findings of not guilty. The military judge stated he would reconsider the motion. While the record does not contain his reconsidered decision, it is plain the military judge did not resolve the issue in appellant's favor.

## LAW AND ANALYSIS

*Conflict-Free and Effective Assistance of Counsel*

Appellant asserts his defense counsel was ineffective by advising him to cooperate with CID without first securing an immunity deal. Appellant also asserts he was "deprived of his right to conflict-free counsel" because after defense counsel rendered the "ill-advised and tactically nonsensical" advice, "counsel [was] effectively unable to object to any of the resulting evidence" during trial. We disagree on both grounds.[4]

---

[3] Specification 2 of Charge I alleged, in relevant part, that in order to effect the object of the conspiracy between PVT Solt and appellant (i.e., the sale of military property of a value of more than $500), "the said Private Solt and the said Specialist Chandler did steal military property and transport the said property to Oregon." The panel found appellant guilty of Specification 2 of Charge I, "except the words 'the said Private Solt' and 'steal military property and.'"

[4] We need not order a post-trial evidentiary hearing in this case based on our application of the third factor in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997): "if the affidavit is factually adequate on its face to state a claim of legal error

(continued . . .)

10

We evaluate appellant's claim of ineffective assistance of counsel under the standard in *Strickland v. Washington*, 466 U.S. 668 (1984). First, appellant must show counsel's performance was deficient, such that the errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, appellant must demonstrate that "the deficient performance prejudiced the defense" in that he was "deprive[d] . . . of a fair trial, a trial whose result is reliable." *Id.* On appeal, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Appellant urges us to conclude that his defense counsel's advice to cooperate with CID was *per se* deficient, therefore, tainting subsequent representation with conflict. However, appellant's logic is flawed in this case, where he fails to demonstrate his defense counsel's advice was somehow defective or substantially departed from that which a rational counsel would give "under prevailing professional norms." *Id.* at 688. By the time appellant spoke to defense counsel, he had already placed himself in a difficult position. Appellant further complicated matters by omitting critical facts. Appellant told defense counsel he had been in possession of stolen property and that the law enforcement investigation was closing in on him. Appellant and his defense counsel were faced with the questions of "when and how"—importantly, not "if"—government investigators would learn that he was involved with the stolen property. Based on what he told his counsel, appellant's only real—albeit unlikely, but not fanciful—chance to exonerate himself was to proactively approach law enforcement representatives and tell them his side of the story, which he repeatedly asserted was true.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the *circumstances* of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective *at the time*." *Id.* at 689 (emphasis added). Trial defense counsel and his supervisor spent substantial time analyzing appellant's options in the midst of a decidedly non-static situation. Indeed, a rapidly-developing, multi-agency law enforcement investigation was underway and increasingly focused on appellant. His counsel provided multiple courses of action, war-gaming them against the planning assumption he would not receive immunity, as well as against the planning assumption he would. They described appellant's options with him, along with the

---

(. . . continued)

and the [g]overnment . . . offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts." Appellant's post-trial affidavit does not conflict with those submitted by his defense counsel.

related risks and benefits. Appellant evinced his understanding and deliberated on his various options, both with and without his counsel; he did not make his decision hastily. At appellant's direction and before his decision to cooperate, trial defense counsel and his supervisor attempted to obtain government leniency. Ultimately, and understanding the government had denied his bid for leniency, appellant concurred with his defense counsel's advice to cooperate anyway, and he personally decided to do so. Appellant knowingly, intelligently and voluntarily chose his course of action after receiving thorough and competent advice from his defense counsel. In summary, appellant has fallen far short of establishing any deficient performance by his defense counsel.

We also recognize the possibility that a counsel's personal interests may so conflict with those of his client to create an impermissible conflict of interest and, depending on the circumstances, deprive him of effective assistance of counsel. *See United States v. Saintaude*, 61 M.J. 175 (C.A.A.F. 2005); *United States v. Cain*, 59 M.J. 285 (C.A.A.F. 2004). However, under the facts of this case, we find no evidence to support the allegation that defense counsel was in any way conflicted from representing appellant at trial.

*Post-trial Session*

Appellant's assignment of error alleging the proceeding in revision was improper implicates various statutes and procedural rules, including Article 60, UCMJ; Article 63, UCMJ; R.C.M. 1102(b)(1); and R.C.M. 924.

Within limits, Article 60(e), UCMJ, authorizes the convening authority to order certain post-trial proceedings:

> (e)(1) The convening authority or other person taking action under this section, in his sole discretion, may order a proceeding in revision or a rehearing.
>
> (2) A proceeding in revision may be ordered if there is an apparent error or omission in the record or if the record shows improper or inconsistent action by a court-martial with respect to the findings or sentence that can be rectified without material prejudice to the substantial rights of the accused. In no case, however, may a proceeding in revision—
>
> > (A) reconsider a finding of not guilty of any specification or a ruling which amounts to a finding of not guilty;

(B)    reconsider a finding of not guilty of any charge, unless there has been a finding of guilty under a specification laid under that charge, which sufficiently alleges a violation of some article of this chapter; or

(C)    increase the severity of some article of the sentence unless the sentence prescribed for the offense is mandatory.

(3)    A rehearing may be ordered by the convening authority or other person taking action under this section if he disapproves the findings and sentence and states the reasons for disapproval of the findings.  If such person disapproves the findings and sentence and does not order a rehearing, he shall dismiss the charges.  A rehearing as to the findings may not be ordered where there is a lack of sufficient evidence in the record to support the findings.  A rehearing as to the sentence may be ordered if the convening authority or some other person taking action under this subsection disapproves the sentence.

Article 63, UCMJ, lists several procedures that must be followed when holding a rehearing.  One of the requirements is that a rehearing "shall take place before a court-martial composed of members not members of the court-martial which first heard the case."

Rule for Courts-Martial 924 provides that, in a trial by members, a finding may only be reconsidered if prior to announcement of the findings in open court, a member proposes reconsideration and the panel properly votes upon the proposal for reconsideration.

Rule for Courts-Martial 1102, "Post-trial sessions," largely mirrors Article 60(e)(1)-(2), UCMJ, stating, "[p]roceedings in revision may be directed [by the military judge or the convening authority] to correct an apparent error, omission, or improper or inconsistent action by the court-martial, which can be rectified by reopening the proceedings without material prejudice to the accused" and listing the same prohibited actions during proceedings in revision. R.C.M. 1102(b)(1); R.C.M. 1102(a) (post-trial sessions "In general."); R.C.M. 1102(c) ("Matters not subject to post-trial sessions.").  Rule for Courts-Martial 1102(e)(2) also details the procedure for post-trial hearings, including actions a judge must take:

The military judge shall take such action as may be appropriate, including appropriate instructions when members are present.  The members may deliberate in

closed session, if necessary, to determine what corrective action, if any, to take.

In this case, the military judge ordered a proceeding in revision in order to correct his previous error in instructing the panel on a defense raised by the evidence in the case. *United States v. Gleason*, 43 M.J. 69 (C.A.A.F. 1995), is most apposite to appellant's case and resolves in his favor whether the subject of this post-trial proceeding was lawful. There, an officer panel convicted appellant of, among other offenses, solicitation to commit murder. *Id.* at 71. The military judge erred in his sentencing instructions with respect to potential forfeiture of pay consequences. *Id.* Approximately six weeks later, without any order from the convening authority, the military judge convened a "rehearing on the sentence" and provided correct instructions to the same panel, which deliberated again and returned the same sentence. *Id.* Holding that the post-trial session was improper, our superior court wrote:

> The sentence rehearing apparently was conducted before the same ten members who participated in the original trial. . . . We note that Article 63, UCMJ, 10 U.S.C. § 863 (1983), prohibits the members who sat in the original proceeding from sitting on a rehearing. On the other hand, if this proceeding is treated as a proceeding in revision, there is no problem in having the same members. However, the purpose of the proceeding . . . was to correct an error in the sentencing instructions, which is not a proper purpose for a proceeding in revision. *See United States v. Roman*, 22 U.S.C.M.A. 78, 81, 46 C.M.R. 78, 81 (1972). In view of our disposition of this case we need not determine the validity of the rehearing on sentence. If it was invalid, the original proceeding would be reinstated, so a sentence existed which gave the Court of Military Review jurisdiction. *See* Art. 66(b)(1), UCMJ, 10 U.S.C. § 866(b)(1).

*Id.* at 71 n.4.

*Roman* involved similar facts to *Gleason*. During authentication of the record, the military judge discovered he had omitted required sentencing instructions regarding voting procedures. *Roman*, 22 U.S.C.M.A. at 79, 46 C.M.R. at 79. Two weeks after adjournment, the judge reconvened the court-martial to hold a proceeding in revision and, over defense objection, provided the panel with the omitted sentencing instructions. *Id.* at 79, 46 C.M.R. at 79. The panel sentenced appellant to substantially the same sentence. *Id.* at 79, 46 C.M.R. at 79. In *Roman*, the Court of Military Appeals discussed the actions that a court may take in a case

after it reconvenes for a proceeding in revision: "[w]hat is intended to be accomplished in revision proceedings is . . . correction of the record to reflect unintended omissions, to clarify ambiguities, and to correct improper or illegal sentence announcements, the alteration of which does not materially prejudice the substantial rights of the accused." *Id.* at 81, 46 C.M.R. at 81. For example, the court cited to various cases allowing proceedings in revision to ascertain that an accused was fully advised on the record of his right to counsel or to correct erroneous announcement of a sentence when it was clear the omissions occurred through clerical and verbal errors. *Id.* at 81, 46 C.M.R. at 81 (citing *United States v. Barnes*, 21 U.S.C.M.A. 169, 170, 44 C.M.R. 223 (1972); *United States v. Liberator*, 14 U.S.C.M.A. 499, 34 C.M.R. 279 (1964); *United States v. Robinson*, 4 U.S.C.M.A. 12, 15 C.M.R. 12 (1954)). However, the court distinguished a correction of sentencing instructions, noting that it was "substantially different from the type of corrective action appropriate in revision proceedings" and created the strong possibility of prejudice to an appellant because the same panel that already sentenced appellant is unlikely to fairly reconsider the sentence. *Id.* at 81, 46 C.M.R. at 81. The court ultimately held:

> A fault in instruction is not an error or omission in the record but . . . a substantive error in the trial . . . that . . . cannot be corrected by a proceeding in revision. In these circumstances, we conclude that no authority existed for the attempt to cure the presentencing instructional error by proceedings in revision.

*Id.* at 81, 46 C.M.R. at 81 (omissions in original) (internal quotations marks and citations omitted). Our predecessor court has also stated that proceedings in revision cannot be used "to correct a flawed instruction to the members." *United States v. Jackson*, 34 M.J. 1145, 1151 (A.C.M.R. 1992) (citing *Roman*, 22 U.S.C.M.A. 78, 46 C.M.R. 78).

We can think of no matters more substantive than the defenses potentially applicable to a servicemember facing court-martial. Instead of resolving an administrative matter, the post-trial proceeding here more closely resembled a rehearing, but with the same panel—which the judge had no authority to order. The military judge likely understood that his approach was somewhat akin to a rehearing, as he invoked the sentence limitations provisions of R.C.M. 810(d). The hearing could also be viewed as a flawed attempt at reconsideration of findings, for which R.C.M. 924 governs. Contrary to R.C.M. 924, the proceeding occurred after the

15

panel unambiguously announced findings on 10 July 2012, and it occurred at the military judge's direction instead of a panel member's proposal.[5]

We endorse initiative-taking by military judges. Such an approach is crucial in our justice system, which favors resolution of disputed issues at trial. We also understand the desire for quickly reaching a solution in the field, instead of waiting for a convening authority or an appellate court to order the same solution. However, our system's range of post-trial remedies does not include remand to an original finder of fact in order to cure instructional error. This limitation is understandable, since one cannot reasonably expect panel members to set aside their original findings and deliberate anew. Put another way, as the post-trial proceeding began in this case, it was far more likely that the panel would simply validate its earlier findings of guilt; we cannot affirm such a process. Instead, we conclude the military judge erred in directing a proceeding in revision for the purposes of correcting erroneous instructions and directing the same panel to deliberate again. We regard this proceeding as void *ab initio* under the circumstances and need not address additional procedural peculiarities, including the military judge's emailing a redacted record of trial to the panel and his denying the defense request to voir dire the panel.

*Mistake of Fact Instruction*

The post-trial proceeding is a nullity. Following the logic in *Gleason*, we are left with the July 2012 findings requiring Article 66, UCMJ, review.[6]

---

[5] *See also United States v. Barrett*, ACM 35790, 2006 CCA LEXIS 39 (A.F. Ct. Crim. App. 28 Feb. 2006), *pet. granted*, 64 M.J. 87-88 (C.A.A.F. 2006), *aff'd in part and rev'd in part*, 64 M.J. 307 (C.A.A.F. 2006) (summ. disp.).

[6] However, this court "may act only with respect to the findings . . . as approved by the convening authority." UCMJ art. 66(c). When a convening authority does not expressly address the findings in his action, a service court "may presume that the convening authority approved the findings reached by the court-martial and reported in the [staff judge advocate's] post-trial recommendation, absent material evidence to the contrary." *United States v. Alexander*, 63 M.J. 269, 275 (C.A.A.F. 2006). The recommendation in this case contained the result of trial as an enclosure. The result of trial reflected, *inter alia*, the finding of guilty of Specification 2 of Charge I (conspiracy with PVT Solt to sell military property) from the proceeding in revision, wherein the panel found appellant not guilty of certain excepted words. Therefore, this court presumes the convening authority implicitly approved the finding of guilty of Specification 2 of Charge I as announced in the proceeding in

(continued . . .)

At trial, the government introduced evidence of appellant's statement to CID that he believed some of the stolen property was actually abandoned or belonged to PVT Solt. Appellant's statement raised the defense of mistake of fact, thus, the military judge was required to instruct the panel on this defense. R.C.M. 920(e)(3); *United States v. DiPaola*, 67 M.J. 98, 100-01 (C.A.A.F. 2008). The correct mistake of fact instruction was whether appellant honestly believed that the property in question was abandoned or otherwise belonged to PVT Solt, not whether his belief was honest and reasonable. *Binegar*, 55 M.J. 1.

Providing the panel with an incorrect instruction as to an affirmative defense is an error of constitutional magnitude. We must now determine whether the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967); *Neder v. United States*, 527 U.S. 1, 18 (1999); *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002). We are convinced beyond a reasonable doubt that, absent this error, the panel would have found appellant guilty of the affected specifications. *See United States v. Baxter*, 72 M.J. 507, 513 (Army Ct. Crim. App. 2013) (citing *DiPaola*, 67 M.J. at 102). In reaching this conclusion, we find no reasonable possibility that the incorrect instruction might have "contribute[d] to the [appellant's] conviction" for the reasons outlined below. *United States v. Davis*, 73 M.J. 268, 271 (C.A.A.F. 2014).

Indeed, the evidence at trial did not focus on whether appellant *reasonably* believed the property was abandoned or belonged to PVT Solt. Instead, the slight evidence of mistake in this case was immediately subject to overwhelming questions about whether such a purported mistake was *honest*. The evidence of appellant's knowledge that the property actually belonged to the Army and that the Army had not abandoned the property was overwhelming.

Appellant was an armorer and it is reasonable to conclude he was familiar with accountability of weapons accessories. The optics—whose collective value was over $600,000—were sensitive items requiring storage in a secure arms room (or, in this case, an armorer's office). Appellant described PVT Solt's surreptitious entry into the armorer's office to take the weapons accessories. Appellant then removed the stolen optics from their cases, placed them in garbage bags, and discarded the cases. The stolen accessories ultimately recovered were functional, not broken.

---

(. . . continued)

revision. We do not address the jeopardy issues relative to a finding of not guilty after such an erroneous proceeding.

When first interviewed, appellant attempted to deceive CID by facilitating a futile search of his mother's home, knowing that he had sold or transferred the optics to Mr. BB and Mr. WP. We acknowledge appellant's argument that his behavior during his CID-monitored conversation with PVT Solt was little more than a government-concocted ruse, and we disagree. His words and actions during that encounter clearly referred to their pre-existing conspiracy to steal and sell military property. Despite the instructional error, the panel's findings on 10 July 2012 are reliable.

*Consolidation of Conspiracy Specifications*

In Specifications 1 and 2 of Charge I, appellant was charged with two separate conspiracies with PVT Solt: the first alleged a conspiracy to steal military property of a value of more than $500; the second alleged a conspiracy to sell military property of a value of more than $500.

When an appellant enters into a single agreement to commit multiple offenses, it ordinarily constitutes a single conspiracy. *Braverman v. United States*, 317 U.S. 49, 53 (1942) (holding that it is the "agreement which constitutes the conspiracy . . . one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one."); *United States v. Pereira*, 53 M.J. 183, 184 (C.A.A.F. 2000); *United States v. Mack*, 58 M.J. 413, 418 (C.A.A.F. 2003).

While not raised by appellant, our review of the evidence at trial leads us to conclude that only one agreement, and therefore one conspiracy, existed between appellant and PVT Solt, the objects of which were to both steal and sell military property of a value of over $500. Accordingly, we will consolidate Specifications 1 and 2 of Charge I in our decretal paragraph and will reassess the sentence.

*Post-trial Delay*

In his *Grostefon* matters, appellant personally complains of excessive delay during the post-trial processing of his case and requests relief in the form of additional confinement credit.

Appellant was sentenced on 11 July 2012. The record of trial was 745 pages in length. On 25 January 2013, 198 days after completion of appellant's trial, defense counsel first received the record for review. Defense counsel completed his errata on 28 March 2013, 62 days later. The military judge received the record of trial on 2 April 2013, 5 days later. The post-trial hearing occurred 4 May 2013,

32 days later.[7] The military judge authenticated the record of trial on 16 May 2013. The staff judge advocate's recommendation was signed on 17 June 2013, 32 days after authentication. Appellant was served the record of trial and recommendation on 27 June 2013. After requesting a 20-day extension of time to submit R.C.M. 1105 matters, appellant provided his submission on 26 July 2013, 29 days after receiving the record and recommendation. In his post-trial matters, appellant complained that his due process right to speedy post-trial review was violated. While the government's explanation noted the addendum was "forwarded to [the] Chief, Criminal Law Division" on 6 August 2014, 11 days after receipt of appellant's post-trial matters, the addendum was not signed until 4 September 2013, 29 days later. The addendum contained the following advice and recommendation from the staff judge advocate:

> I disagree with defense's allegations of legal error and of prejudice to the accused caused by post trial delay. While I disagree with these allegations, I recommend you grant the accused ten (10) months clemency.

The same day, the convening authority approved the staff judge advocate's recommended ten months clemency and took action in appellant's case, 420 days after announcement of sentence.

We review de novo appellant's claim that he has been denied his due process right to a speedy post-trial review. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). Our superior court has adopted the four factor test of *Barker v. Wingo*, 407 U.S. 514, 530 (1972) to determine whether a due process violation has occurred: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice. *Id.*

There is a presumption of unreasonable delay when more than 120 days have elapsed between completion of an appellant's trial and action by the convening authority. *Id.* at 142. This presumption triggers analysis of the remaining three factors. *Id.* In this case, the total post-trial processing time from sentence to action was 420 days. The government provided a contemporaneous explanation for the delay. Considering the time taken for defense counsel to review the record for errata and the additional 20-day extension for appellant to submit R.C.M. 1105 matters, 82 of the 420 days are attributable to appellant. The remaining 338 days rest

---

[7] Including the post-trial hearing, the record of trial was 820 pages in length.

squarely on the government's shoulders, and it offers no persuasive reason to justify this passage of time.[8] We resolve the first and second factors in appellant's favor.

Turning to the third factor, while appellant complained of the unreasonable post-trial processing in his case, he waited to do so until he submitted his R.C.M. 1105 matters, over one year after sentencing. This was the first time that appellant made any assertion of his right to speedy post-trial review. The untimely demand weighs slightly against appellant. *See id.* at 138; *see also Canchola*, 64 M.J. at 246. Turning to the fourth factor, upon review of the record, we find no prejudice and, under *Moreno*, hold appellant's due process right to speedy post-trial review was not violated.

However, even when there is no showing of prejudice, we may nonetheless find a due process violation if "in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Having considered the lengthy delay, the government's explanation of the delay, and appellant's less than timely assertion of his right to speedy post-trial review, we hold that the post-trial delay in this case is not so egregious as to find a due-process violation under *Toohey*.[9]

Finally, we must also review the appropriateness of appellant's sentence in light of the lengthy post-trial processing. *See* UCMJ art. 66(c); *United States v.*

---

[8] In the contemporaneous memorandum, the government explained, *inter alia*, that the lengthy transcription period was due to the high volume of cases that were tried within the jurisdiction with only three court reporters, one of whom temporarily left JBLM to attend the Advanced Leader Course and another of whom was moved from JBLM to a different duty station. "[A] general reliance on . . . manpower constraints will not constitute reasonable grounds for delay nor cause this factor to weigh in favor of the [g]overnment." *United States v. Canchola*, 64 M.J. 245, 247 (C.A.A.F. 2007) (per curiam).

[9] Even assuming a due process violation under *Toohey*, we would find the error harmless beyond a reasonable doubt. *See United States v. Arriaga*, 70 M.J. 51, 56 (C.A.A.F. 2011) (citing *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006)). Finally, we would also find that relief is not warranted under the facts of this case. *See United States v. Rodriguez-Rivera*, 63 M.J. 372, 386 (C.A.A.F. 2006) (even assuming a due process violation for post-trial delay, "to fashion relief that would be actual and meaningful in this case would be disproportionate to the possible harm generated from the delay. Accordingly, we conclude that no additional relief is appropriate or warranted in this case.").

*Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) ("[Pursuant to Article 66(c), UCMJ, service courts are] required to determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay."). Upon review of the entire record, to include the lengthy post-trial delay, the government's explanation, the lack of timely demand for speedy post-trial review by appellant, the nature and seriousness of appellant's offenses, the dismissal of Specification 2 of Charge I and the resulting reassessed sentence stated in our decretal paragraph, we find appellant's reassessed sentence is appropriate. *See United States v. Garman*, 59 M.J. 677, 683 (Army Ct. Crim. App. 2003) (holding that the post-trial delay "was not so egregious under the totality of the circumstances as to render appellant's otherwise appropriate sentence inappropriate.").

## CONCLUSION

Specifications 1 and 2 of Charge I are consolidated into Specification 1 of Charge I as follows:

> In that Specialist (E-4) Joshua D. Chandler, U.S. Army, did, at or near Joint Base Lewis-McChord, Washington between on or about 1 December 2011 and on or about 3 January 2012, conspire with Private (E-1) Nicholas A. Solt to commit offenses under the Uniform Code of Military Justice, to wit: larceny and sale of military property of a value of more than $500, the property of the United States, and in order to effect the objects of the conspiracy the said Private Solt and the said Specialist Chandler did steal military property and the said Specialist Chandler did transport the said property to Oregon.

The finding of guilty of Specification 1 of Charge I, as consolidated, is AFFIRMED. The finding of guilty of Specification 2 of Charge I is set aside and that specification is dismissed. The remaining findings of guilty are AFFIRMED.

Reassessing the sentence in accordance with the principles of *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986), we are confident the panel would have adjudged a sentence at least as severe as the approved sentence absent the errors described above. The sentence is AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored.

Senior Judge LIND and Judge KRAUSS concur.

CHANDLER—ARMY 20120680



FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court