# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES OF AMERICA, Petitioner**
**v.**
**Lieutenant Colonel KENNETH SHAHAN, Military Judge**
**Respondent**
**and**
**Staff Sergeant FRANCISCO LARA,**
**United States Army**
**Real Party in Interest**

**ARMY MISC 20160776**

For Petitioner:  Captain Samuel E. Landes, JA (argued); Captain Samuel E. Landes, JA; Captain Carling M. Dunham, JA (on brief).

For Real Party in Interest:  Lieutenant Colonel Christopher Daniel Carrier, JA (argued); Colonel Mary J. Bradley, JA; Lieutenant Colonel Christopher Daniel Carrier, JA; Captain Cody D. Cheek (on brief).

23 December 2016

-------------------------------------------------------------------------------------------------
MEMORANDUM OPINION AND ACTION ON PETITION FOR
EXTRAORDINARY RELIEF IN THE NATURE OF A WRIT OF PROHIBITION
-------------------------------------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

In this case we wrestle with the issue of whether to grant the United States' petition for a writ of prohibition.  Specifically, the government asks this court to prohibit the panel members from redeliberating on findings that have already been announced in open court.  We determine that issuance of the writ is necessary and appropriate.

## BACKGROUND

As a writ petition, we consider a relatively undeveloped record.  However, the material facts do not appear to be in dispute.

LARA—ARMY MISC. 200160776

The real party in interest (hereinafter the accused) was arraigned on a charge of sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012 & Supp. II 2015) [hereinafter UCMJ]. As the offense alleged a sexual act of digital penetration, the specification included the specific intent element that the act was committed "with an intent to abuse, humiliate, harass, or degrade any person or to arouse or gratify the sexual desire of any person." UCMJ art. 120(g)(1)(B).

During trial on the merits, "some evidence" was presented that the accused was intoxicated during the time sexual assault occurred. However, the defense theory at trial was that no sexual act took place.

The military judge did not instruct the panel the accused's voluntary intoxication could cause him to be unable to form the specific intent required by the specification. Neither side objected to the military judge's instructions.

During deliberations, the panel asked the military judge the following question: "If the assailant of sexual assault is unaware of what he or she is doing, is the incident still considered a wrongful offense?"

In an Article 39(a), UCMJ, session, the military judge proposed answering the panel's question by directing them to the definition of what constitutes a "sexual act" under Article 120(g)(1)(B), UCMJ. Both parties agreed with the military judge's proposed answer. The military judge then reread the definition of "sexual act," to include the requirement that the act be committed with a specific intent.

The president of the panel stated that the military judge had answered their question. Both parties then again stated they had no objection to the military judge's explanation.

The panel convicted the accused of the offense.

The court-martial proceeded directly to presentencing. The government called a single sentencing witness who testified about the effects the offense has had on her.

The defense presented five sentencing witnesses. The witnesses testified to the accused's duty performance, character, and the effect that his conviction would have on his wife and family.

The accused then made an unsworn statement. The statement was made by answering questions by counsel, and included the following exchange:

2

Q. Did you ever consider testifying during the case in chief?
A. I have.

Q. Why didn't you do that?

A. After drinking for so much, the memories, they're not really there and my testimony would be, "I don't remember," "I don't remember," and "I don't remember." I don't know.  There's no point to it, I don't think.

Q. You didn't feel comfortable testifying because you don't have the memory?

A. No, ma'am.

Q. Now that you've heard [the alleged victim] testify about what she does remember, how does it make you feel?

A. It makes me feel a little surprised, because that's not me.  And I'd like to think that I do take care of my Soldiers and although she wasn't my Soldier, she was junior to me.  And I wouldn't try to hurt her, but--I don't know.  I'm sorry.  I don't remember that night to say I'm sorry for this [sic] or for hurting you.  I don't know how to say it.  I never meant to do anything.  We were in Vegas.  We're--I never meant for anything, ma'am.

[. . .]

Q. Is there anything else that you'd like the panel to consider before they deliberate on your sentence?

A. I don't have enough recollection of that night to be able to say yes or no, either way, but I never intended for anything.  If it actually did or not, I don't know, but my memory is there--they're not there to say yes or no.

As an unsworn statement, appellant was not cross-examined. The defense then rested their sentencing case. After discussing sentencing instructions during an Article 39(a), UCMJ, session, the court-martial recessed for the evening.

The next morning, the military judge informed the parties he believed he erred in his findings instructions. Specifically, he stated that he should have given the members the voluntary intoxication instruction. *See* Dep't. Of Army, Pam. 27-9, Legal Services: Military Judge's Benchbook [hereinafter Benchbook], para. 5-12 (10 Sep. 2014). The military judge stated that he saw two options: a mistrial or re-instructing the panel then allowing them to re-deliberate.

The defense said they would not request a mistrial and would instead request that the panel be allowed to re-deliberate on findings.

The government objected to this proposed remedy. The government was specifically concerned appellant, who had not testified at trial, had made a lengthy unsworn statement during sentencing specifically telling the panel about his mental state due to his voluntary intoxication.

The military judge explained he believed he had committed error in omitting the voluntary intoxication instruction and the accused had been prejudiced by the error. He also stated, however, the error may be harmless. The military judge sua sponte considered, but rejected, declaring a mistrial. In determining whether a mistrial was warranted he assessed the evidence in the case as follows:

> . . . the court notes that the defense in this case was not that Staff Sergeant Lara did not intend to abuse humiliate [the alleged victim] or to arouse himself; rather, the defense was that the sexual act never occurred and that [the alleged victim] was creating false memories due to an alcohol-induced blackout. Factually speaking, the likelihood that the panel members would have concluded that Staff Sergeant Lara penetrated [the alleged victim's] vulva with his fingers, but that he did not do so with the intent to arouse—excuse me, with the intent to abuse, humiliate, harass, or degrade any person or to arouse or gratify the sexual desire of any person, is so remote that the very high standard for a mistrial as previously cited is not satisfied.

The military judge then decided that a mistrial was not warranted and overruled the government's objection. The military judge called the members back

into the court-martial, and provided them with the voluntary intoxication instruction. The parties did not give a second closing argument addressing the new instruction, nor did they object to not being able to give such argument.

Shortly after the members began deliberating, this court issued a stay of the proceedings so that we could consider the instant writ petition. *United States v. Shahan and Lara*, ARMY MISC. 20160776 (Army Ct. Crim. App. 9 Dec. 2016) (order). We held oral argument six days later on 15 December 2016.

## DISCUSSION

To obtain the requested writ of prohibition, petitioner must show: (1) there is "no other adequate means to attain relief;" (2) the "right to issuance of the writ is clear and indisputable;" and (3) the issuance of the writ is "appropriate under the circumstances." *Cheney v. United States Dist. Court*, 542 U.S. 367, 380–81 (2004) (citations and internal quotation marks omitted). "A writ of prohibition . . . is a 'drastic instrument which should be invoked only in truly extraordinary situations.'" *United States v. Howell*, 75 M.J. 386, 390 (C.A.A.F. 2016) (quoting *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983)).

At oral argument, both parties appeared to agree that the United States has no other means of obtaining relief. Should we not issue the writ, both parties believe that were the members to return a finding of not guilty, that finding would be conclusive in all respects. "However mistaken or wrong it may be, an acquittal cannot be withdrawn or disapproved." *United States v. Hitchcock*, 6 M.J. 188, 189 (C.M.A. 1979) (citing *Fong Foo v. United States*, 369 U.S. 141, 143 (1962)). Accordingly, our focus today is on whether the right to the issuance of the writ is clear and indisputable. Broadly, this question regards the authority of the military judge. May the military judge of a court-martial composed of members reinstruct the members and direct them to re-deliberate on findings that have already been announced in open court?

### A. Dietz v. Bouldin

Recently the U.S. Supreme Court addressed a similar issue in *Dietz v. Bouldin*, 136 S. Ct. 1885 (2016). In that civil case, a jury returned a judgement for the plaintiff of zero dollars. The district court judge thanked the jury for their service and ordered them "discharged," and they were "free to go." However, a few minutes later the judge ordered the clerk to bring the jurors back. The judge realized, because of a stipulated agreement on damages, a verdict of zero dollars was not "legally possible." *Id*. at 1890. Over plaintiff's objection, the judge reinstructed the jury and directed them to re-deliberate. The Court affirmed the district judge's "inherent power" to reinstruct the jury in that case.

5

The Court noted that they had never "precisely delineated the outer boundaries of a district court's inherent powers . . . ." *Id.* at 1891. The Court then established a two-part test for determining whether a federal district judge has an inherent power:

> First, the exercise of an inherent power must be a "reasonable response to the problems and needs" confronting the court's fair administration of justice. *Degen v. United States,* 517 U.S. 820, 823–824 (1996). Second, the exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute. *See id.,* at 823; Fed. Rule Civ. Proc. 83(b) (districts courts can "regulate [their] practice in any manner consistent with federal law"); *see*, *e.g., Bank of Nova Scotia v. United States,* 487 U.S. 250, 254 (1988) (holding that a district court cannot invoke its inherent power to circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a)).

*Dietz*, 136 S. Ct. at 1892. The Court then concluded:

> These two principles—an inherent power must be a reasonable response to a specific problem and the power cannot contradict any express rule or statute—support the conclusion that a district judge has a limited inherent power to rescind a discharge order and recall a jury in a civil case where the court discovers an error in the jury's verdict.

*Id.*

Applying *Dietz* to this case we are constrained by two threshold concerns. First, any direct comparison of the inherent power of a military judge to a federal district court judge is dangerous. The difference in authority is not so much a difference in degree, but a difference in kind. It would be wrong to assume that merely because a district court judge has a certain inherent authority, that same reasoning would apply to a military judge. However, the flipside to this argument may be persuasive. A military judge likely does not have *greater* inherent authority than a district judge. Not only do military judges and federal district judges stand on different constitutional footing, but also Article 36, UCMJ, would appear to

operate to provide military judges *at most* the same authority as a federal district court judge.

Second, *Dietz* was a civil case. The Court in *Dietz* specifically "caution[ed] that our recognition here of a court's inherent power to recall a jury is limited to civil cases only. . . . we do not address here whether it would be appropriate to recall a jury after a discharge in a criminal case." 136 S. Ct. at 1895. Thus, at best, *Dietz* is silent (and perhaps skeptical) of allowing a federal district court judge to reinstruct a jury in a criminal case.

Notwithstanding these two limiting considerations, we find the *Dietz* framework helpful.

### 1. A Reasonable Response to the Problems Confronting the Court

The first question posed by *Dietz* was whether the judge's actions are a reasonable response to the problems and needs confronting the court's fair administration of justice. Here, the military judge commendably brought to the parties' attention an error he had made when instructing the panel.[1] However, the military judged recognized the error only after all the sentencing evidence was already before the members. Thus, the military judge needed to determine whether it was a reasonable response to the situation to tell the members to ignore all the sentencing evidence, reinstruct the members, and direct them to re-deliberate. The accused specifically asked for this remedy.

The government, by contrast, believes that the panel cannot be expected to ignore the accused's lengthy unsworn statement regarding his intoxication at the time of the assault. More specifically, the government believes the effect of the military judge's actions allows the accused to present exculpatory evidence during

---

[1] We note that the military judge described the voluntary intoxication instruction as a mandatory instruction on a defense. Under R.C.M. 920(e)(3) a military judge is required to instruct on "any special defense under R.C.M. 916 in issue." However, voluntary intoxication is not a defense under R.C.M. 916 and is not otherwise a "special defense." *See* R.C.M. 916(a) (definition of "special defense"). Rather, the instruction guides a panel in assessing whether the government has met its burden of proving beyond a reasonable doubt that the accused possessed a certain specific intent. However, whether it is an instruction on a defense—or whether it is a mandatory or discretionary instruction—all appear to be beside the point. The military judge determined based on the case in front of him that its omission was error. This decision we do not second guess in determining this writ petition.

sentencing without subjecting himself to the crucible of cross-examination.[2]  Given the military judge's superior position, we do not find the military judge's actions to be unreasonable given the problems confronting the court.

## 2.  *Contrary to any limitation contained in the rules*

The second question *Dietz* poses is can a judge exercise an inherent power that is "contrary to any express grant of or limitation on the district court's power contained in a rule or statute."  136 S. Ct. 1888.  We address the two rules on point.  Rule for Courts-Martial [hereinafter R.C.M.] 924 addresses when a court-martial may reconsider a finding.  R.C.M. 1102 addresses the military judge's authority to order a proceeding in revision.

### a.  *Rule for Courts-Martial 924 : Reconsideration*

At oral argument, counsel for the accused argued that the military judge was exercising his inherent authority to allow the members to reconsider their findings.  For courts-martial composed of members, R.C.M. 924 reads as follows:  "(a) *Time for reconsideration.* Members may reconsider any finding reached by them before such finding is announced in open session."  Counsel for the accused argued that we should interpret this rule as limiting only the member's authority to initiate a reconsideration, and not a limitation on the military judge's authority to direct the members to reconsider a finding.  We do not find that interpretation persuasive, and instead find that the rule clearly prohibits reconsiderations of a panel's finding after it has been announced in open session.

First, we note that the drafter's analysis to the 1995 amendment to the R.C.M. states that the rule "limits reconsideration of findings by the members to findings reached in closed session but not yet announced in open court . . . ."  R.C.M. 924 analysis at A21-72.

Second, we note that our superior court has stated, citing R.C.M. 922 and 924(a) that "when the panel announced its findings in open court, those findings were final and were not subject to reconsideration by the members."  *United States v. Thompson*, 59 M.J. 432, 440 (C.A.A.F. 2004).  In *Thompson*, the Court of Appeals for the Armed Forces (CAAF) found that the military judge's ability to reinstruct the

---

[2] Here, the defense specifically declined to ask for a mistrial.  Thus, were the government to ask for a mistrial, or were the judge to direct a mistrial sua sponte, the government may be barred from retrying the accused under the Double Jeopardy Clause.  *See Watada v. Head*, 530 F. Supp. 2d 1136 (W.D. Wash. 2007) (federal district judge prohibited retrial of soldier when first court-martial ordered mistrial over defense objection).

panel regarding faulty instructions ended once the panel's findings were announced. *See also* UCMJ art. 52(c) (requiring a vote of more than one-third of the members to reconsider a finding of guilty). Similarly, in *United States v. Chandler*, 74 M.J. 674 (Army Ct. Crim. App. 2015), we considered whether a military judge's post-trial hearing to address instructional error could be considered a reconsideration, stating:

> The hearing could also be viewed as a flawed attempt at reconsideration of findings, for which R.C.M. 924 governs. Contrary to R.C.M. 924, the proceeding occurred after the panel unambiguously announced findings on 10 July 2012, and it occurred at the military judge's direction instead of a panel member's proposal.

*Id*. at 684.

Accordingly, we find that R.C.M. 924 unambiguously prohibits the members from reconsidering their findings after they have been announced in open court.

### b. Rule For Courts-Martial 1102: Proceedings in Revision

R.C.M. 1102(b)(1) allows a military judge to direct a proceeding in revision "to correct an apparent error, omission, or improper or inconsistent action by the court-martial, which can be rectified by reopening the proceedings without material prejudice to the accused."

In *Chandler*, this court determined that proceedings in revision may not be used to correct instructional error:

> We endorse initiative-taking by military judges. Such an approach is crucial in our justice system, which favors resolution of disputed issues at trial. We also understand the desire for quickly reaching a solution in the field, instead of waiting for a convening authority or an appellate court to order the same solution. However, our system's range of post-trial remedies does not include remand to an original finder of fact in order to cure instructional error. This limitation is understandable, since one cannot reasonably expect panel members to set aside their original findings and deliberate anew.

*Id*. at 684. We went on to describe the post-trial hearing as "void *ab initio*" and a "nullity." *Id*. We did not consider the re-announced findings as having cured any

instructional error. In short, we determined that reinstructing the panel and asking them to re-deliberate, did not, in law, cure the initial instructional error. Our superior court reached a similar conclusion, albeit regarding sentencing instructions. *United States v. Gleason*, 43 M.J. 69, 71 n.4 (C.A.A.F. 1995) ("[T]he purpose of the proceeding . . . was to correct an error in the sentencing instructions, which is not a proper purpose for a proceeding in revision.").

We have one stark difference, however, between *Chandler*, *Gleason*, and the case before us today. Here, the accused requested the panel be reinstructed and allowed to re-deliberate. However, we do believe that the military judge's *authority* to order re-deliberation can turn on the tactical decisions of the accused. In *Chandler*, for example, we described the proceeding as not being lawful. 74 M.J. at 683.

Accordingly, the binding precedent of this court and our superior court prohibits a proceeding in revision in these circumstances.

## B. Issuance of the Writ

If the military judge may not allow the panel to reconsider (under R.C.M. 924) or revise (under R.C.M. 1102) the panel's findings, then the findings must stand or be set aside. Therefore, we find that the government's right to the issuance of the writ is clear and indisputable. If findings cannot be reconsidered or revised, and there cannot be *two* sets of findings as to the same specification from the same court-marital, issuance of the writ is appropriate.

## C. Mistrial

Our issuance of the writ prohibits the military judge from allowing the panel members to re-deliberate the findings in this case. However, the writ does not prohibit the military judge from considering whether a mistrial is an appropriate remedy for the instructional error in the case. We note that the initial decision not to grant a mistrial was based on two considerations. First, the military judge believed a less drastic remedy was available. Second, the accused did not ask for a mistrial because, at least partially, he preferred the remedy of reinstructing the panel. Accordingly, at the request of the accused or sua sponte, the military judge should consider whether, "as a matter of discretion" a mistrial is "manifestly necessary in the interests of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." R.C.M. 915.

LARA—ARMY MISC. 200160776

## CONCLUSION

The writ of prohibition sought by the United States is GRANTED. The record of trial is returned to the military judge for action not inconsistent with this opinion.

Senior Judge MULLIGAN and Judge FEBBO concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court