# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, HERRING, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 ANTHONY V. SANTUCCI**
**United States Army, Appellant**

ARMY 20140216

Headquarters, Joint Readiness Training Center and Fort Polk
Gregory A. Gross, Military Judge
Colonel Samuel A. Schubert, Staff Judge Advocate

For Appellant: Major Christopher D. Coleman, JA; Captain Amanda McNeil Williams, JA; Mr. Frank J. Spinner, Esquire (on brief); Mr. Philip D. Cave, Esquire (on supplemental brief); Captain Matthew D. Bernstein, JA.

For Appellee: Lieutenant Colonel A.G. Courie III, JA; Major Scott L. Goble, JA; Captain Linda Chavez, JA (on brief).

30 September 2016

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

PENLAND, Judge:

A panel composed of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of rape, one specification of sexual assault, one specification of forcible sodomy, one specification of assault consummated by a battery, and two specifications of adultery, in violation of Articles 120, 125, 128 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 920, 925, 928, 934 (2012).[1] The panel sentenced appellant to a dishonorable discharge, confinement for twenty years, and forfeiture of all pay and allowances. The convening authority approved the adjudged sentence.

---

[1] In accordance with appellant's plea, the military judge found him guilty of one specification of false official statement, in violation of Article 107, UCMJ.

We review this case under Article 66(c), UCMJ. Appellant raises three assignments of error, two of which merit discussion but no relief. We have considered appellant's matters personally submitted under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982); one merits discussion but no relief. Finally, we briefly discuss and grant relief based on an unreasonable multiplication of charges.

## BACKGROUND

Appellant engaged in sexual intercourse with JM, between 19-20 April 2013, and TW on 6 July 2013. These two events led to his prosecution for, *inter alia*, sexual assault with respect to JM and rape, sexual assault, and forcible sodomy with respect to TW.[2]

Ms. JM, who was married to another soldier, testified that she first met appellant at the Paradise bar when, as she was passing by him, he grabbed her and said "[l]et me buy you a shot." After spending an evening drinking shots with appellant, her husband picked her up and took her home. Over the next week, JM and appellant exchanged texts, some of which were flirtatious. On 20 April 2013, JM agreed to hang out with appellant in his barracks room. She testified she wanted somebody to talk to, as she and her husband were having marital difficulties. Once at appellant's barracks room, the two proceeded to drink bourbon and talk. After most of the bourbon was gone, JM agreed to appellant's offer for a backrub. She testified the massage was "rough and scary." JM decided to leave, at which point appellant pushed her on his bed and exposed his penis. At some point after that, she fell asleep. JM, who by then was drunk, next remembered appellant on top of her, engaging in sexual intercourse. She was able to kick appellant off of her, and then left the barracks. She eventually made it back to her home, but couldn't remember the ride. She later reported the assault to a neighbor and her husband.

At trial, appellant admitted engaging in sexual intercourse with JM, but claimed it was consensual.

On the evening of 5 July 2013, Ms. TW, who was also married to another soldier, went alone to the Paradise bar. There she first met appellant when she sat next to him at the bar. Over the course of several hours, the two had several drinks and danced. They eventually left the bar and TW offered to drive appellant home. After swerving and nearly hitting another car, TW pulled over and appellant took the wheel. TW testified she remembered little after appellant began driving. Appellant took TW to his barracks at Fort Polk. She didn't remember the ride or entering the installation. She testified the next thing she remembered was appellant carrying her up concrete stairs to his room. The following colloquy between trial counsel and TW described what happened once in the room:

---

[2] The forcible sodomy occurred at the same time and place as the rape and sexual assault.

Q: Now tell us when you went into [appellant's] room, what can you remember[?]

A: I remember him being on top of me and choking me. I remember being slapped in the face.

Q: What else do you remember?

A: I remember him saying a lot. I remember him just choking me. It's like he wanted a reaction, but I didn't give it to him. He just looked evil. And I remember being flipped over on my stomach and—it's hard to say.

Q: Go ahead, just say it.

A: He did me in the butt. It hurt really bad.

Q: Did he put his penis anywhere else?

A: My vagina.

Q: Which one first?

A: My vagina.

Later, in describing her injuries:

Q: When he put his penis in your butt, did you suffer any injury from that?

A: I remember being in the bathroom and I was bleeding.

Q. Now did you suffer other injuries?

A: I had bruises on my arms. My face was swollen from being slapped. My head was sore, and I was hit in the head. And I had scratches on my back. I had bruises on my legs.

[. . .]

A. I was also bitten on my face and my arms.

She later reported the assault to the police.

A subsequent examination of TW by a licensed nurse noted bruises and scratches on her arms, neck, and legs, as well as teeth marks on TW's face and redness on her rectum. These injuries were documented in various government exhibits admitted by the military judge.

During his testimony, appellant admitted to engaging in vaginal and anal intercourse with TW. He characterized this interaction as "rough" sex and claimed TW consented.

At the close of evidence on findings, the military judge, without objection by either party, provided a standard Military Rule of Evidence [hereinafter Mil. R. Evid.] 413 instruction allowing the members to consider the allegations involving TW as propensity evidence in relation to the sexual assault allegation involving JM. *See* Dep't of Army, Pam. 27-9, Legal Services, Military Judges' Benchbook [hereinafter Benchbook], para. 7-13-1, n.4 (1 Jan. 2010). The military judge specified that the members could only consider such propensity evidence if they first determined by a preponderance of evidence that appellant raped TW. The government did not request, and the military judge did not provide, a similar instruction for considering the allegation involving JM as propensity evidence for the offenses involving TW.

Defense counsel requested a mistake of fact instruction with regard to TM and JW. Although the military judge did not specifically rule on the request, he did instruct the panel regarding mistake of fact with respect to the specifications of sexual assault, both of which alleged the victims were incapable of consent due to impairment, and forcible sodomy. However, the military judge did not give the mistake of fact instruction with respect to the rape allegation, Specification 1 of Charge I, which alleged appellant used unlawful force by "forcing his penis inside the vulva of [TW] with physical strength sufficient that she could not avoid or escape the sexual conduct."[3] During closing, government counsel-while arguing she did not do so-acknowledged that if TW had consented to the sexual activity, then appellant would not be guilty of using "unlawful" force. The panel convicted appellant of, *inter alia*, raping, sexually assaulting and forcibly sodomizing TW, but acquitted appellant of sexually assaulting JM.

---

[3] The military judge correctly instructed the members that "evidence concerning consent to the sexual conduct is relevant and it must be considered in determining whether the government has proven the element that the sexual conduct was done by using unlawful force beyond a reasonable doubt."

Before sentencing deliberations, the military judge instructed the panel to consider the rape and sexual assault specifications involving TW as one for sentencing purposes.

## LAW AND DISCUSSION

### A. Military Rule of Evidence 413 Instruction

Appellant asserts the military judge erred by instructing the members they could use the evidence of appellant's rape of TW as propensity evidence in relation to the sexual assault allegation involving JM.[4]  Based on our superior court's decision in *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), we agree.

We review a military judge's decision to admit evidence under Mil. R. Evid. 413 for an abuse of discretion. *United States v. Solomon,* 72 M.J. 176, 179 (C.A.A.F. 2013).  "Whether a panel was properly instructed is a question of law we review de novo." *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (citation omitted).  Where an instructional error rises to a constitutional dimension, we review the error to determine if it was harmless beyond a reasonable doubt. *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005) (citations omitted).  "The inquiry for determining whether constitutional error is harmless beyond a reasonable doubt is whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence." *Id.* (citations and internal quotation marks omitted).

Here, the military judge's Mil. R. Evid. 413 instruction was improper based on our reading of *Hills*.  As our superior court noted in that case, "[i]t is antithetical to the presumption of innocence to suggest that conduct of which an accused is presumed innocent may be used to show a propensity to have committed other conduct of which he is presumed innocent."  75 M.J. at 356.  We, however, find beyond a reasonable doubt that the error, under the circumstances of this case, was harmless and did not contribute to appellant's conviction or sentence.

First, the issue here was not whether sexual contact occurred between TW and appellant.  Appellant admitted to having vaginal and anal intercourse with TW.  The injuries suffered by TW, as corroborated by the testimony of a medical provider and other witnesses, leave no doubt that TW was not a willing participant.  Her testimony credibly established, as well, that she was incapable of consenting to this conduct due to her extreme state of intoxication.

---

[4] Appellant assigns two errors on this topic, first alleging error "in considering the specifications as propensity evidence" and, second, error regarding the "instructions on how the members were to evaluate and use the propensity evidence."  For purposes of this decision, we consider them together.

Second, the propensity instruction was uni-directional. The panel was not instructed inversely, and appellant was acquitted of sexually assaulting JM. The instruction only allowed the panel to consider appellant's rape of TW as evidence appellant had a propensity to sexually assault JM. Appellant's acquittal of sexually assaulting JM removed any risk of harm caused by the instruction. Appellant's acquittal of the assault of JM, if anything, shows the members were not confused in applying the appropriate burden of proof-beyond a reasonable doubt-as to each charged offense. JM's allegation, in contrast to the allegations involving TW, was not supported by corroborative physical evidence.

### B. Mistake of Fact Instruction

Appellant personally alleges the military judge erred by not instructing the panel on mistake of fact with respect to the rape specification. We agree. *See United States v. Willis*, 41 M.J. 435, 437 (C.A.A.F. 1995). However, we again conclude appellant suffered no prejudice. We so conclude based on the strength of TW's testimony, corroborated by medical providers and witnesses, regarding the injuries she sustained as a result of his violence on the night in question. Viewing the evidence in its entirety, this was clearly not a situation from which appellant could have feasibly claimed an honest, reasonable, mistaken belief that TW was consenting to his misconduct. We also note the panel received the mistake of fact instruction with respect to the forcible sodomy specification-of which appellant now stands convicted-yet defense counsel made no argument that appellant mistakenly believed TW consented. Indeed, the defense theory throughout the trial was that TW actually consented, not that appellant mistakenly believed she did. While *some* evidence raised the instructional requirement with respect to rape, we are confident beyond a reasonable doubt that its omission did not contribute to the verdict. "Providing the panel with an incorrect instruction as to an affirmative defense is an error of constitutional magnitude" which we examine to determine if it is harmless beyond a reasonable doubt. *United States v. Chandler*, 74 M.J. 674, 685 (C.A.A.F. 2015) (citations omitted). Having done so, we find no reasonable possibility the lack of a mistake of fact instruction "'contribute[d] to the [appellant's] conviction.'" *Id.* (quoting *United States v. Davis*, 73 M.J. 268, 271 (C.A.A.F. 2014).

### C. Unreasonable Multiplication of Charges

The findings, as approved by the convening authority, contain an unreasonable multiplication of charges, being the rape and sexual assault of TW (Specifications 1 and 2 of Charge I, respectively). The military judge remedied the problem, in part, by instructing the panel to consider the two offenses as one for sentencing. Perhaps exigencies of proof motivated the government's charging decision-in which case *United States v. Elespuru,* 73 M.J. 326, 329-30 (C.A.A.F. 2014), would control-but we are ill-equipped to make that determination where

defense counsel made no motion for appropriate relief as to findings at trial. Therefore, appellant has forfeited the error.

Nonetheless, under our Article 66(c), UCMJ, authority to affirm only so much of the findings and sentence as "should be approved," we shall provide relief. We give great weight to our determination that under the facts and circumstances of this case, convictions for rape and sexual assault unreasonably exaggerate appellant's criminality. *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001).

## CONCLUSION

Specification 2 of Charge I is conditionally set aside and DISMISSED. *See United States v. Briton*, 47 M.J. 195, 203 (C.A.A.F. 1997) (J. Effron concurring); *United States v. Hines*, 75 MJ __, 2016 CCA LEXIS 439, *7-8 fn4 (Army. Ct. Crim. App. 27 Jul. 2016); *United States v. Woods*, 21 M.J. 856, 876 (A.C.M.R. 1986). Our dismissal is conditional on Specification 2 of Charge I surviving the "final judgment" as to the legality of the proceedings. *See* Article 71(c)(1) (defining final judgment as to the legality of the proceedings).

The remaining findings of guilty are AFFIRMED.

Reassessing the sentence in accordance with the principles of *United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986), the sentence is AFFIRMED. Our decision to conditionally set aside and dismiss one specification does not change the penalty landscape. The nature of the remaining offenses captures the gravamen of appellant's crimes: raping and forcibly sodomizing TW. We have experience with the types of sentences resulting from cases such as this one, and, based on the affirmed findings of guilty, we are confident the panel would have adjudged a sentence at least as severe as that which we affirm. We further find the affirmed sentence not inappropriately severe.

All rights, privileges, and property, of which appellant has been deprived by virtue of the portion of the findings set aside by this decision are ordered restored. *See* UCMJ art. 75(a).

Senior Judge CAMPANELLA and Judge HERRING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court