# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, CELTNIEKS, AND SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant First Class MANUEL ORTIZ, III**
**United States Army, Appellant**

ARMY 20150267

Headquarters, U.S. Army Maneuver Center of Excellence
Charles A. Kuhfahl, Jr. and Christopher D. Carrier, Military Judges
Colonel Charles C. Poché, Staff Judge Advocate

For Appellant:  Lieutenant Colonel Tiffany M. Chapman, JA; Captain Cody D. Cheek, JA; Major Julie L. Borchers, JA (on brief).

For Appellee:  Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Captain Joshua B. Banister, JA (on brief).

20 December 2017

---------------------------------------------------
MEMORANDUM OPINION ON REMAND
---------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SCHASBERGER, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of absence without leave in violation of Article 86 Uniform Code of Military Justice, 10 U.S.C. § 886 (2006 & Supp. V 2012) [UCMJ], and convicted appellant, contrary to his pleas, of two specifications of rape of a child, two specifications of sexual assault of a child, and two specifications of providing alcohol to a minor, in violation of Articles 120b and 134, UCMJ.  The military judge sentenced appellant to be discharged from the service with a dishonorable discharge, confinement for forty-five years, and a reduction to the grade of E-1.  The convening authority approved the sentence as adjudged and credited appellant with 187 days against the sentence to confinement.

ORTIZ—ARMY 20150267

This case is again before us for review in light of our superior court's holding in *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017).[1]  After considering the additional pleadings submitted by the parties and the entire record, we affirm the findings of guilty and the sentence.  We conclude the military judge's conditional ruling regarding the admissibility of evidence under Military Rule of Evidence [Mil. R. Evid.] 414 did not ripen into error as the condition did not occur.

## BACKGROUND

The assaults at issue all took place at the appellant's residence in the McGraw Housing area on Fort Benning, Georgia.  Appellant was separated from his wife and lived by himself in the quarters, across the street from fourteen-year-old TM and a few blocks from fourteen-year-old HH.  At various times appellant's children would stay at the house in Georgia.  Appellant also had a string of "nannies" staying at the house.

### A.  Assault of KS

KS was a thirteen-year-old friend of HH.  On 8 September 2012, KS spent the night with HH.  That evening, KS and HH spent some time hanging out in front of TM's house with TM, TM's mother, appellant, the then-nanny, and a few other adults.  Though having a good time, the girls had to go back to HH's house.  Late that night, KS and HH sneaked out of HH's house and headed back to TM's house.  No one was out at TM's house.

Appellant was on his porch with another soldier, Specialist (SPC) SM, smoking and drinking.  Appellant invited the two girls over, gave them alcohol, cigarettes, and invited them inside to play beer pong.  Appellant asked KS if she was in the eighth grade.  At some point HH tripped the circuit breaker causing the house to go dark.  The lights were eventually turned back on, but some of the rooms were still dark.

KS and appellant wound up alone in the kitchen area.  Appellant grabbed KS, choked her, and laid her on the ottoman.  He pulled her pants off and penetrated her vagina with his penis and his fingers.  When he heard HH come downstairs, appellant got off KS.  She put on her pants and ran outside.  KS had blood on her clothing and legs.  HH saw that KS was upset and asked KS what was wrong.  KS told HH she thought she was raped.

---

[1] This court affirmed the findings and sentence in June 2016.  *United States v. Ortiz*, ARMY 20150267 (Army Ct. Crim. App. 30 Jun. 2016) (unpub.).  On 27 July 2017, our superior court set aside our decision and remanded the case to this court for a new review under Article 66, UCMJ, in light of its decision in *Hukill*.  *United States v. Ortiz*, 76 M.J. 441 (C.A.A.F. 2017) (summ. disp.).

Approximately two weeks later, KS reported the incident. A sexual assault nurse examiner (SANE) conducted an examination of KS. The SANE noted old bruising around KS's neck and injuries to KS's genital region. The injuries included a lesion on her vaginal tissue, a hematoma on her cervix, and the SANE noted KS's cervix was split. The SANE concluded these were injuries of blunt force trauma.

The government seized the ottoman from appellant's residence. It tested positive for blood that was matched by deoxyribonucleic acid (DNA) to KS. The DNA taken from KS's bloody underwear revealed a small amount of male DNA. Due to the small sample amount, the laboratory was constrained in the type of test it could run. The testing showed that appellant or any member of appellant's paternal line could be contributors.

Special agents from the Criminal Investigation Command (CID) took statements from appellant and SPC SM. Appellant stated he saw the two girls that night but did not interact with them. He said the power in his house went off, then a few minutes later he saw them running down the street, and later realized they had stolen some beer. Specialist SM had a different recollection. In his statement, SPC SM said the girls came by and joined him and appellant drinking and smoking. Specialist SM kissed one of the girls and at some point appellant disappeared with the other. Specialist SM did not know the age of the girls but guessed they were eighteen or nineteen years old.

On 2 October 2012, shortly after being questioned by CID, appellant loaded his belongings in his car, left Fort Benning with his children and fled to Mexico.

### B. Assaults of TM

Appellant and TM's mother were friends. Living across the street from each other, they had frequent interactions. TM's mother would help appellant get ready for his children's visits and would have TM help by babysitting for appellant's children. She also had TM help clean appellant's house. TM's mother and appellant would hang out on the weekends.

In early autumn of 2012, appellant hosted a party that TM and her mother attended. During the party appellant pushed up against TM, kissed her, and eventually put his hands down her pants inserting his finger into her vagina. TM did not report this to anyone because he was her mother's friend. She figured he did it because he was drunk and did not think it would happen again.

Not long after the first incident, TM went with her mother to help clean appellant's house. They were cleaning to prepare the house for appellant's children who were being dropped off by appellant's brother. After her mother left, TM drank several beers with the "nanny." TM was afraid if she went home her mother would know she had been drinking. TM stayed over at appellant's house and slept on the

couch. Appellant also went to sleep on a couch. TM woke to appellant kissing her and taking off her pants. TM tried to get away but appellant held her down and vaginally penetrated her. When someone shushed them from the top of the stairs, appellant covered her mouth with his hand.

TM kept quiet about these incidents even after hearing about the incident with KS. TM did not want to be involved and figured KS would report it.

A few weeks later, TM's mother and appellant were invited to a poker game; TM's mother had TM babysit her younger brother and appellant's children. Appellant returned home first. He found TM in the kitchen, placed her face down on the counter, pulled down her pants and vaginally penetrated her. TM did not want her little brother or appellant's children to come see what was going on so she remained quiet.

TM did not report the assaults until a year after appellant fled to Mexico. TM was talking with HH and HH's mother. They started talking about KS and the incident with appellant. TM broke down and started crying, eventually telling them about being sexually assaulted by appellant.

### C. Mil. R. Evid. 414 Motion at Trial

Prior to trial, the government filed notice it intended to use evidence of the charged child molestation, as well as an incident of uncharged sexual abuse of a child, to prove the other charged specifications. The defense filed a motion to preclude the government's introduction of evidence under Mil. R. Evid. 414, arguing the evidence was not relevant, not probative, and failed the balancing test under Mil. R. Evid. 403. The military judge did not issue a written ruling, but stated he would provide guidance on what could be argued before the trial began.

At trial, the military judge made a conditional ruling: "I'm not going to preclude the government from making a [Mil. R. Evid.] 414 argument if they are very careful in the language that they use, bearing in mind the balancing interest as it were between what is allowed by rule [Mil. R. Evid.] 414 and the due process requirements of -- the due process that each element of each offense be proven." This condition did not come to pass.

The government did not argue that appellant showed a propensity to commit sexual assaults of children. The trial counsel argued each specification individually, highlighting the evidence for each specification. In closing, the trial counsel did argue that appellant was "by no means a first time offender." The military judge sua sponte challenged this statement. In the colloquy that followed, the trial counsel apologized for the confusing statement and explained he was referring to the fact that there were two victims.

4

## **LAW AND DISCUSSION**

The decision to admit evidence is reviewed for an abuse of discretion. *Hukill*, 76 M.J. at 221 (citation omitted). "The meaning and scope of [Mil. R. Evid.] 413 is a question of law that we review de novo." *United States v. Hills*, 75 M.J. 350, 354 (C.A.A.F. 2016) (citation omitted). In *Hills*, our superior court found that using Mil. R. Evid. 413 to admit evidence of charged misconduct to establish other charged misconduct "violated Appellant's presumption of innocence and right to have all findings made clearly beyond a reasonable doubt, resulting in constitutional error." *Id.* at 356. For constitutional error, this court tests for prejudice under the standard of harmless beyond a reasonable doubt. *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006). "The inquiry for determining whether error is harmless beyond a reasonable doubt is 'whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence.'" *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005) (quoting *United States v. Kaiser*, 58 M.J. 146, 149 (C.A.A.F. 2003)). An error is not harmless beyond a reasonable doubt when there is a reasonable possibility the error complained of might have contributed to the conviction. *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)); *United States v. Chandler*, 74 M.J. 674, 685 (Army Ct. Crim. App. 2015).

The case at hand differs significantly from other cases remanded to us for further review in light of *Hills* and *Hukill*. *Compare United States v. Hazelbower*, ARMY 20150335, 2017 CCA LEXIS 721, at *5-11 (Army Ct. Crim. App. 22. Nov. 2017) (mem. op.) (finding the constitutional error harmless beyond a reasonable doubt), *United States v. Santucci*, ARMY 20140216, 2016 CCA LEXIS 594, at *8-9 (Army Ct. Crim. App. 30 Sept. 2016) (mem. op.) (finding the constitutional error harmless beyond a reasonable doubt), *and United States v. Bonilla*, ARMY 20131084, 2016 CCA LEXIS 590, at *23-25 (Army Ct. Crim. App. 30 Sept. 2016) (mem. op.), *aff'd*, 76 M.J. 335 (C.A.A.F. May 3, 2017) (summ. disp.) (finding the constitutional error harmless beyond a reasonable doubt), *with United States v. Ramos-Cruz*, ARMY 20150292 (Army Ct. Crim. App. 11 Dec. 2017) (summ. disp.) (setting aside findings of guilty affected by the constitutional error), *United States v. Degregori*, ARMY 20150581, 2017 CCA LEXIS 741, at *5 (Army Ct. Crim. App. 30 Nov. 2017) (summ. disp.) (setting aside findings of guilty affected by the constitutional error), *United States v. Reynolds*, ARMY 20140856, 2017 CCA LEXIS 731, at *7 (Army Ct. Crim. App. 28 Nov. 2017) (summ. disp.) (setting aside findings of guilty affected by the constitutional error), *United States v. Aguiar-Perez*, ARMY 20140715, 2017 CCA LEXIS 732, at *6-7 (Army Ct. Crim. App. 28 Nov. 2017) (summ. disp.) (setting aside the findings of guilty affected by the constitutional error), *United States v. Denson*, ARMY 20150137, 2017 CCA LEXIS 564, at *7 (Army Ct. Crim. App. 18 Aug. 2017) (mem. op.) (setting aside findings of guilty affected by the constitutional error), *United States v. Grant*, ARMY 20150572, 2017

ORTIZ—ARMY 20150267

CCA LEXIS 357, at *3-4 (Army Ct. Crim. App. 25 May 2017) (mem. op.) (setting aside findings of guilty affected by the constitutional error), *and United States v. Duarte*, ARMY 20140843, 2017 CCA LEXIS 61, at *6-7 (Army Ct. Crim. App. 30 Jan. 2017) (summ. disp.) (setting aside the findings of guilty in light of constitutional error).

In each of these cases, the military judge specifically sanctioned the use of propensity evidence and associated argument. Conversely, in the case at hand, the military judge never issued a ruling admitting evidence under Mil. R. Evid. 414. Instead, he set conditions under which propensity evidence could be used. The conditions were a balance of the things allowable under Mil. R. Evid. 414 and the due process rights of appellant. Presumably, had the government met the conditions, the military judge would have then allowed the government to argue propensity and that decision would have been error, which is to say the military judge's conditional ruling *could* have become an error.

Reviewing the record, we find that though the government filed notice of an intent to offer evidence under Mil. R. Evid. 414, no such evidence was actually offered or admitted. The closest the government came to connecting the offenses was in the last line of argument where the trial counsel stated appellant was not a first time offender. The military judge immediately challenged the trial counsel on this statement. The military judge's questions of the trial counsel and the trial counsel's retraction of this statement make it clear that the military judge was not considering this a permissible argument under any rule, to include Mil. R. Evid. 414.

The government's case against appellant was overwhelming. The government introduced DNA evidence that showed KS's blood on the ottoman–exactly where KS stated she was assaulted. The government also tied KS's bloody underwear to the night of the offense and to DNA that could be from appellant. The government introduced evidence of the injuries KS sustained, which corroborated KS's description of what happened. Appellant's statement was contradicted by KS, HH, and most importantly appellant's friend SPC SM. Moreover, SPC SM's statement corroborated details from KS and HH's statements, with the exception of the age of the girls. Crucial aspects of TM's testimony were corroborated with external evidence. TM's mother described sending TM to help clean the house and requiring her to babysit appellant's children. She also corroborated the presence of the "nannies" and the relationship appellant had with her family.

The defense case was weak. The defense never shook the credibility of either KS or TM. There was no motive for either girl to lie. The defense argument was focused on technicalities (e.g., whether the government proved appellant administered an intoxicant to KS; whether appellant knew TM was under sixteen years of age). Both girls independently testified that appellant knew they were in

6

the eighth grade, and there was evidence that appellant routinely saw TM in her Faith Middle School shirt.

There is no evidence in the record that the military judge considered propensity evidence. He never made findings of fact or completed an analysis under Mil. R. Evid. 414, which would indicate that he was going to consider evidence regarding the assault of KS to prove any of the specifications of TM or vice versa.

## CONCLUSION

On consideration of the entire record, to include those matters appellant raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982),[2] the findings of guilty and sentence as approved by the convening authority are AFFIRMED.

Senior Judge BURTON and Judge CELTNIEKS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[2] In addition to the remanded issue, appellant requested leave to file a supplemental *Grostefon* issue. The request was untimely. Furthermore, the issue was one which was known at the time of trial and during the original appeal. This court denied the request on the basis that there was no good cause shown to allow an out-of-time appeal to litigate a pretrial punishment issue when there was no new information, evidence, or change in the law.