# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E1 ADRIAN GONZALEZ**
**United States Army, Appellant**

ARMY 20160363

Headquarters, U.S. Army Combined Armed Center & Fort Leavenworth
Charles L. Pritchard, Jr., Military Judge (arraignment)
Marc D. Cipriano, Military Judge (trial)
Colonel Craig E. Merutka, Staff Judge Advocate

For Appellant: Lieutenant Colonel Christopher D. Carrier, JA; Major Brendan Cronin, JA; Major Joseph T. Marcee, JA (on brief).

For Appellee: Colonel Tania M. Martin, JA; Captain Austin J. Fenwick, JA; Captain Joshua B. Bannister, JA (on brief).

3 July 2018

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SCHASBERGER, Judge:

In the instant case, Private (PVT) Adrian Gonzalez was charged with sexual assault of three women: Specialist (SPC) AC, PVT TO[1] and Mrs. VB. At issue is whether the use of the charged assaults for propensity purposes was prejudicial error. We find that appellant's plea of guilty to the charges of abusive sexual contact of VB waived any objection to the military judge's ruling with respect to those charges. With respect to the charge of rape of SPC AC, we are unable to conclude that the use of propensity evidence was harmless beyond a reasonable doubt, and take corrective action in our decretal paragraph.

---

[1] The military judge acquitted appellant of Specification 1 of Charge III, alleging the rape of PVT TO.

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of three specifications of violating a general order or regulation and two specifications of abusive sexual contact, and contrary to his pleas, of one specification of rape, in violation of Articles 92 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920 (2012) [UCMJ]. The military judge sentenced appellant to a dishonorable discharge and confinement for ten years, a sentence later approved by the convening authority.

## BACKGROUND

### A. Assault of Specialist AC (Specification 2 of Charge III)

In June 2013, while waiting to be court-martialed for other charges,[2] appellant was transferred to Tripler Army Medical Center and assigned as the senior cook on the grill at the dining facility. Specialist (SPC) AC reported to Hawaii in July 2013 and was assigned to work at the grill under appellant's supervision. At the time appellant was a sergeant. Over the following several months appellant and SPC AC became friends.

On 19 January 2014, appellant texted SPC AC and asked if she wanted to accompany him and another friend, LH, to a movie. After consulting her husband, SPC AC agreed. The original plan consisted of appellant and LH picking up SPC AC and going to the movie. Appellant arrived at SPC AC's house, later than expected and alone. The two of them went and picked up LH. To SPC AC's surprise, the three then went to Moose McGillycuddy's, a bar and dance club, so LH could pick up some marijuana.

Once at McGillycuddy's, SPC AC drank several strong drinks.[3] She danced with LH and appellant. When they left the bar at 0300 the next morning, SPC AC was drunk; she could not walk without holding handrails and she needed assistance to climb into appellant's truck.

On the drive back, SPC AC immediately fell into a deep sleep. She slept through the twenty-five minute drive to McDonald's, the stop at the drive thru, and the ten minute drive back to appellant's house. At the house, LH and appellant tried to awaken SPC AC. They spoke to her, shook her and slapped her face. SPC AC did

---

[2] These charges are relevant only in that they form part of the basis of the government's Military Rule of Evidence [Mil. R. Evid.] 413 motion. On 28 May 2014, appellant pleaded guilty to one specification of maltreatment of a subordinate, one specification of rape, and three specifications of abusive sexual contact. The victims of these offenses, SPC JF and SPC MM, were, respectively, a member of appellant's unit and a subordinate. Appellant did not tell anyone he was pending charges; his supervisors, coworkers and friends were unaware of the charges.

[3] The drink was referred to as AMF, which stood for "Adios Mother Fucker," and, as described by one witness, contained several types of liquor, Sprite, and a sweetener.

not respond, so they left her in the truck and went inside. After using the bathroom, LH asked that appellant drive her home. Appellant drove LH home and told LH that he would "make sure that [SPC AC] got home safe."

Specialist AC woke up the next morning in a parking lot. Her pants and underwear were around her ankles and she felt a semen-like fluid between her legs and coming out of her vagina. She saw appellant sleeping in the driver's seat, with his pants down to his knees. Specialist AC screamed. Appellant woke up, said "fuck, fuck, fuck," pulled up his pants and drove to SPC AC's house. During the ten minute drive, neither appellant nor SPC AC said anything.

When SPC AC got home she went in her house, laid down on the couch and curled up in the fetal position. Her husband yelled at her, went upstairs and started to pack. Specialist AC followed her husband upstairs. Before she could tell him anything he had a seizure. SPC AC had to call for an ambulance to take her husband to the hospital.

Specialist AC did not reveal the assault to her husband until months later. She reported the incident to authorities a year after the incident.

At trial, the government's evidence concerning the assault of SPC AC consisted of her testimony, LH's testimony corroborating SPC AC's level of intoxication, and SPC AC's husband's testimony as to her demeanor when she returned the morning before his seizure. The government offered no physical evidence corroborating the assault.

Contrary to appellant's plea, the military judge found appellant guilty of this offense.

*B. Assault of Mrs. VB (Specifications 3 and 4 of Charge III)*

In February 2014, in anticipation of his court-martial for other sexual misconduct, appellant moved his family back to the continental United States. He told his friends that there was a problem with his orders so he could not immediately join his family. Appellant's friend, SPC NB, invited him to stay at his house. SPC NB's wife, Mrs. VB also resided at the house. Neither SPC NB nor Mrs. VB knew appellant was pending court-martial charges.

On 4 May 2014, after drinking and watching a movie in their living room, SPC NB and Mrs. VB fell asleep on the living room floor. At around 0400, after a night out drinking appellant returned and could not get into the residence. Mrs. VB heard loud banging and attempted to wake her husband. After waking him, Mrs. VB went back to sleep on the floor. Specialist NB let appellant in the house, rejoined his wife, and went back to sleep.

Later that morning, Mrs. VB woke up because someone was touching her buttocks. She opened her eyes and realized it was not her husband. She heard appellant say "come here, come here, let's go to the room." Mrs. VB told appellant

to stop. He did not stop, but instead attempted to convince Mrs. VB to have sex with him. Appellant touched her breasts, buttocks, inner thighs and mons pubis. Unable to wake her husband, Mrs. VB got up and left the house.

Appellant pleaded guilty to touching Mrs. VB's buttocks (Specification 3 of Charge III) and guilty, by exceptions and substitutions, to touching Mrs. VB's mons pubis (Specification 4 of Charge III).

*C. Trial*

The government charged appellant with sexual assault of SPC AC, two specifications of abusive sexual contact of Mrs. VB, sexual assault of PVT TO, as well as violating a general order by providing alcohol to PVT TO, a person under the age of twenty-one, and fraternizing with PVT TO. In a pretrial motion, the government sought to introduce evidence of appellant's prior sexual assault convictions and use that evidence, as well as the charged Article 120, UCMJ, offenses to establish that appellant had a propensity to commit the sexual misconduct.

The government motion specifically requested the pre-admission of the stipulation of fact from appellant's prior court-martial, the transcript of appellant's providence inquiry at that trial, and the result of trial (RROT). The government also asked for a ruling on the admissibility of:

a. Evidence of the Accused's prior conviction for sexually assaulting two prior victims (if RROT not pre-admitted);
b. Evidence of the accused's assault of [Mrs. VB] for its bearing on the charged assault of [PVT TO] and [SPC AC];
c. Evidence of the accused's assault of [PVT TO] for its bearing on the charged assault of [Mrs. VB] and [SPC AC]; and
d. Evidence of the accused's assault of [SPC AC] for its bearing on the charged assault of [Mrs. VB] and [PVT TO].

The defense did not file a motion opposing the government's motion but, at a pretrial motions hearing on 18 April 2016, opposed the motion, citing Military Rule of Evidence [Mil. R. Evid] 403. The next day, the military judge issued a written ruling with findings of fact, and found the evidence was admissible but not admitted.

On 4 May 2016, appellant submitted an offer to plead guilty (OPG) to Charge I and its specifications (the violations of a general regulation or order) and Specifications 3 and 4 of Charge III (the abusive sexual contact of Mrs. VB). After a counter offer, the convening authority accepted the OPG. Within the OPG,

appellant reserved the right to raise a motion regarding unreasonable multiplication of charges for sentencing; no other motions were reserved.

On 10 May 2016, pursuant to his agreement with the convening authority, appellant pleaded guilty to abusive sexual contact with Mrs. VB. Before asking for appellant's plea, the military judge went over the outstanding motions and asked defense if there were any other motions. Defense indicated there were no other motions. Appellant then pleaded guilty to the specifications of Charge I, and Specifications 3 and 4 of Charge III.[4]

After the providence inquiry, the government began their case as to Specifications 1 and 2 of Charge III. When trial counsel attempted to address propensity in his opening statement the military judge stopped him and told him that he could not mention propensity unless it became relevant and the evidence was admitted.

In closing, the government set the tone of the argument early in stating "[T]his court has before it powerful propensity evidence" before listing the various victims of appellant's sexual assaults as his subordinates, his friends, and those who trusted him. After arguing propensity, the trial counsel laid out the evidence supporting the assault of SPC AC, and the evidence supporting the assault of PVT TO. Trial counsel closed his argument the way he started–arguing propensity.

## LAW AND DISCUSSION

### A. Military Judge's Ruling on Military Rule of Evidence 413

The decision to admit evidence is reviewed for an abuse of discretion. *United States v. Hukill*, 76 M.J. 219, 221 (C.A.A.F. 2017). "The meaning and scope of M.R.E. 413 is a question of law that is reviewed de novo." *United States v. Hills*, 75 M.J. 350, 354 (C.A.A.F. 2016) (citation omitted). In *Hills*, the Court of Appeals for the Armed Forces (CAAF) found that using Mil. R. Evid. 413 evidence of charged misconduct as propensity evidence to prove other charged misconduct "violated Appellant's presumption of innocence and right to have all findings made clearly beyond a reasonable doubt, resulting in constitutional error." *Hills* 75 MJ at 356. Though *Hills* was a case involving instructions to a panel, the CAAF made it clear in *Hukill* that this issue extends to military judge alone cases as well. 76 M.J. at 222 ("Whether considered by members or a military judge, evidence of a charged and contested offense, of which an accused is presumed innocent, cannot be used as propensity evidence in support of a companion charged offense.").

---

[4] The trial counsel dismissed Charge II after arraignment but before appellant entered his plea.

The government's motion to admit evidence under Mil. R. Evid. 413 contained both uncharged and charged misconduct.  There was nothing erroneous in the military judge's ruling with regard to the uncharged misconduct.  Of the charged misconduct, the military judge allowed the government to use the evidence of assaults on each of the named victims, (Mrs. VB, SPC AC, and PVT TO) to prove the assault of the other named victims.  It is clear from the decision by CAAF in *Hukill* that this was error.[5]

We must therefore examine the impact of the error on the plea of guilty and on the contested portion of the trial.

### B. Pleas and Waiver of Unpreserved Motions

Appellant argues that he relied on the military judge's ruling on the government's use of Mil. R. Evid. 413 when he decided to plead guilty to some offenses and, as that ruling was erroneous, we should set aside his plea of guilty to abusive sexual contact of Mrs. VB.  We disagree.  We find the appellant's plea of guilty was provident even if he based his decision on an erroneous evidentiary ruling by the military judge.

Unless conditioned under Rule for Courts-Martial [R.C.M.] 910(a)(2), a plea of guilty that results in a finding of guilty, "waives all nonjurisdictional defects at earlier stages of the proceedings."  *United States v. Lee*, 73 M.J. 166, 167 (C.A.A.F. 2014) (quoting *United States v. Bradley*, 68 M.J. 279, 281 (C.A.A.F. 2010).  An erroneous ruling on Mil R. Evid. 413 is not jurisdictional.  This is an evidentiary ruling akin to motions to suppress a confession or on the admissibility of evidence seized without a warrant.  Just as the Supreme Court has found that a valid guilty plea with the advice of counsel waives an erroneous ruling on the admissibility of a pretrial confession (*See McMann v. Richardson*, 397 U.S. 759, 771 (1970)), and the CAAF has found that an unconditional guilty plea waives all suppression motions (*See United States v. Tarleton*, 47 M.J. 170, 172-173 (C.A.A.F. 1997)), we find that unless specifically conditioned, a guilty plea waives any objection to a military judge's ruling under Mil. R. Evid. 413.

Appellant chose to enter into a pretrial agreement (PTA) with the Convening Authority.  In that PTA, appellant agreed to plead guilty to some of the specifications in exchange for a limitation on his sentence.  While appellant preserved his motion in regard to an unreasonable multiplication of charges, the PTA otherwise was silent as to his objection to the military judge's Mil. R. Evid. 413

---

[5] The record indicates that the plea of guilty to the specifications regarding Mrs. VB was anticipated, as at the motions hearing, trial counsel stated "pending the accused's plea of guilty to Specifications 3 and 4 of Charge III we'd like that plea, . . . when and if it becomes relevant, to be as 413 propensity evidence for purposes of abuse against [SPC AC and PVT TO]."  At the time of the military judge's ruling, however, appellant had not entered into an agreement to plead guilty to the assault of Mrs. VB, and the propensity issue was still one of charged misconduct.

ruling. Prior to entry of pleas, the military judge went over the status of the pretrial motions and the results and then twice asked the defense counsel if there were any other motions. The defense counsel indicated there were no other motions and entered a plea of guilty to the violations of a general order or regulation (Charge I and its specifications), and the abusive sexual contact of Mrs. VB (Specifications 3 and 4 of Charge III). This waived any evidentiary issues, such as the military judge's Mil. R. Evid. 413 ruling, as to those charges.

### C. Use of Propensity Evidence in the Contested Portion of Trial

It is constitutional error to admit evidence of charged conduct as propensity evidence in proving other charged conduct. Therefore we must determine whether the military judge's ruling and consideration of improper propensity evidence was harmless beyond a reasonable doubt.[6] *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006). An error is not harmless beyond a reasonable doubt when there is a reasonable possibility the error complained of might have contributed to the conviction. *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007); *United States v. Chandler*, 74 M.J. 674, 685 (Army Ct. Crim. App. 2015).

As our superior court has noted, "[t]here are circumstances where the evidence is overwhelming, so we can rest assured that an erroneous propensity instruction did not contribute to the verdict by 'tipp[ing] the balance in the members' ultimate determination.'" *United States v. Guardado*, 77 M.J. 90, 94 (C.A.A.F. 2017) (quoting *Hills*, 75 M.J. at 358). At first glance, this would appear to be such a case. Specialist AC presented as a very credible witness. The circumstantial evidence – the amount SPC AC had to drink, the inability to wake her at McDonald's or at appellant's house, and her actions upon arriving home – supports the conclusion that SPC AC was assaulted by appellant.

However, we must view this evidence in light of the government's focus on propensity evidence in obtaining a guilty finding.

The clear theme of the prosecution's closing argument was propensity. While much of this was permissible, as it revolved around appellant's prior conviction and the parallels between those crimes and the charged misconduct, government counsel repeatedly made references to improper evidence. The trial counsel used the plea of guilty to the specifications regarding Mrs. VB to show propensity evidence to commit similar acts. Although not an improper use of propensity this was improper argument.[7] Most critically trial counsel grouped the assaults on SPC AC and PVT TO, pointing out the similarities between these incidents and the other assaults.

---

[6] Appellant objected to the government's motion, thereby preserving the error.

[7] The military judge initially stopped trial counsel from arguing propensity based on

(continued . . .)

Though we conclude the evidence against appellant was strong, we cannot conclude beyond a reasonable doubt that improper propensity evidence played no role in appellant's conviction of Specification 2 of Charge III.

## CONCLUSION

Upon consideration of the entire record, the finding of guilty to Specification 2 of Charge III is set aside. The remaining findings of guilty are AFFIRMED. The sentence is set aside. The same or a different convening authority may: 1) order a rehearing on Specification 2 of Charge III and the sentence; 2) dismiss Specification 2 of Charge III and order a rehearing on the sentence only; 3) dismiss Specification 2 of Charge III and reassess the sentence, affirming no more than a dishonorable discharge and confinement for six years.[8]

Senior Judge BURTON and Judge HAGLER concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court

---

(. . . continued)
the assaults of Mrs. VB, as he had not issued a finding of guilt, even though he had accepted appellant's pleas to these offenses. The trial counsel pointed to the prior ruling on Mil. R. Evid 413 and the military judge allowed trial counsel to continue. Under the facts in this case this constituted error, as the government introduced no evidence of the crimes against Mrs. VB and instead relied on appellant's testimony during the providence inquiry and the stipulation of fact. This was an improper use of appellant's providence inquiry and outside of the scope of permissible use of the stipulation of fact, which by its terms, could only be considered for purposes of appellant's guilty pleas and sentencing. The government could have asked the judge to make his findings on the guilty plea as contemplated by R.C.M. 910(g) and then called Mrs. VB to testify as to what happened to her if they wanted to argue propensity based on the guilty plea.

[8] In reassessing the sentence we are satisfied that the sentence adjudged, absent Specification 2 of Charge III, would have been at least a dishonorable discharge and confinement for six years. *See United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986) and *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013). The reassessment being both appropriate and purging the record as it stands of error does not otherwise limit the sentence that may be adjudged at a rehearing. *See* UCMJ, art. 63.